(No. 11944.—Reversed and remanded.)
OSCAR H. OGREN, Plaintiff in Error, *vs.* THE ROCKFORD
STAR PRINTING COMPANY, Defendant in Error.

*Opinion filed June 18, 1919.*

1. LIBEL—*two separate libels cannot be joined in one count of
declaration.* Two or more causes for separate libels or slanders
may be united in one declaration but should not be united in one
count, and when so joined the count is double and demurrable.

2. SAME—*plea of justification should be as broad as the charge.*
If one is guilty of publishing the whole of the alleged defamatory
matter he cannot justify by showing that some part of the defamatory matter, though divisible from the rest, is true, as a plea of
justification must be as broad as the charge, requires certainty of
averment and should contain no other averments except the matters justified.

3. SAME—*publication may be libelous per se without charging
a crime.* Under the definition of libel in section 177 of the Criminal Code it is not necessary to charge one with a crime to make
the charge libelous *per se.*

4. SAME—*what questions are for jury.* The question whether
or not any particular meaning is libelous is for the court, but the
meaning to be ascribed to the words published and whether they
referred to the plaintiff are questions for the jury.

5. SAME—*what defense is admissible under the general issue.*
A denial that certain portions of the alleged libelous matter were
spoken of the plaintiff is a defense which is admissible under the
general issue.

6. SAME—*when witnesses may testify that they understood a
libelous article was published concerning the plaintiff.* Witnesses
cannot testify that they understood by the language of the article
published that the libelous words were spoken of and concerning
the plaintiff unless the defendant disputes the fact and offers evidence to prove that the words referred to another person or object, when the plaintiff may offer proof on the question in rebuttal.

7. SAME—*when question as to truth of article published is leading.* Where a libelous article charges a political candidate with
advocating disreputable policies and presumes to quote from said
candidate's speech at a public meeting, in an attempt to prove the
truth of the article published, witnesses, after reading the article,
should not be asked whether the plaintiff spoke the words quoted,
as such question is leading and relieves the witnesses of testifying
to what they really remembered to have been spoken.

8. SAME—*when books and newspapers are not admissible.* Extracts from books which are not public documents, and from newspapers, are hearsay evidence of a low order and are inadmissible as original evidence, and where a libelous article charges a socialist candidate with advocating disreputable policies, books and newspapers on socialism are not admissible to prove truth of the libel.

9. SAME—*truth is a defense only when published with good motives and for justifiable ends.* Section 4 of article 2 of the constitution is clear and unequivocal that the truth is a defense in both civil and criminal suits for libel only when published with good motives and for justifiable ends, and said section needs no statute to put it in force but is self-executing.

10. SAME—*newspapers are not privileged to publish libelous matter against candidates for office.* It is not the privilege or duty of one publishing a newspaper to publish libelous matter against any candidate for public office, and such person has no more right in that regard than any other person, as the liberty of free speech and of free press are the same.

11. SAME—*public may freely comment on conduct of candidate for office.* Where one becomes a candidate for a public office he is considered as putting his character in issue so far as it may respect his fitness and qualifications for office, and his acts may be canvassed and his conduct boldly censured.

12. SAME—*intention to serve public good cannot justify false defamation of private character of candidate for office.* The publication of falsehood or calumny against public officers or candidates is an offense injurious to the people, and an intention to serve the public good in such a case cannot justify a defamation of private character.

13. SAME—*what matters are not a defense but go only in mitigation of damages.* To a malicious publication of libelous matter against a candidate for public office there is no defense on the ground that it is privileged, and it is not a defense that it is mistakenly and honestly made but such matters go only in mitigation of damages.

14. SAME—*in the same plea matters of mitigation should not be mixed with matters of justification.* Matters in mitigation of damages and matters which amount to a denial of the charge are admissible under the general issue and should not be mixed up in a plea with matters of justification.

15. TRIAL—*presents should not be given to or received by juror.* Presents should not be given to or be received by a juror in any case, as such acts must necessarily produce bad impressions, no

matter how good the intentions may be and however harmless they may in fact be to the loser in the case.

16. SAME—*jurors should not be allowed to read newspaper comments on the trial.* In a case having much notoriety and which has aroused public feeling it is the absolute duty of the court to instruct the jury so positively and firmly that no juror will be likely to obtain newspapers printing matters of evidence or comments on the proceedings, and the court has full power to take whatever steps are necessary to secure a fair trial by instructing the jury, *holding it together or removing newspaper reporters from the court room.*

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

ROY F. HALL, for plaintiff in error.

FISHER, NORTH, WELSH & LINSCOTT, (R. K. WELSH, of counsel,) for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Oscar H. Ogren, plaintiff in error, (hereinafter known as plaintiff,) began suit in the circuit court of Winnebago county against the Rockford Star Printing Company to recover damages for the publication of three alleged libels. The jury returned a verdict of not guilty and judgment was entered against plaintiff. This writ of error is sued out of this court and jurisdiction invoked on the ground that a constitutional question is involved.

The plaintiff had lived in Rockford for many years, was married and had one daughter about ten years old. His father's family also lived in Rockford. Plaintiff had worked at different occupations, served two terms in the city council and had been at a previous election a candidate for mayor of Rockford, and was at the time of the publications alleged to have been libelous a candidate for mayor on the socialist ticket. In the election in question he had as his only opponent W. W. Bennett. The alleged libelous articles were published by the defendant in the manner of

advertisements during this campaign, one at a time on three different days, April 15, 16 and 17, 1915, in its newspaper, the *Rockford Morning Star.* Each article was made the subject of a count in the plaintiff's declaration. So far as they are made a part of the declaration and appear in the abstract they are here copied verbatim in the order in which they were published, and are numbered, respectively, 1, 2 and 3, to-wit:

1. "The real issue is *Socialism.* Rockford faces a calamity. Without evasion or digression, the real, impending and fearful cloud hanging over Rockford to-day is, *The Menace of the Red Flag.* Do you want to turn Rockford over to that emblem? * * * This is a typical expression of socialistic thought. Do not be deceived by sugar-coated and misleading speeches being made on the stump now by Mr. Ogren to get votes. *Stop and Think.* Find out what socialism really is. Meet the issue without passion or prejudice. Before you decide how you will vote next Tuesday, inform yourself. A vote for Oscar Ogren will be a straight vote for socialism."

2. *"Twenty-five New Industries have been established in Rockford during the past four years.* Will one industry locate here if we elect a mayor who, upon taking his seat in the council, made this statement? Statement by alderman Oscar Ogren on taking his seat in council May 3, 1909: 'I have been elected by the socialist party of my ward. All my votes and my actions while in this council will be in direct opposition to all corporations, regardless of what the question or the issue is. That is why I am here—that is my mission in the council.' * * * Honest workingmen want work. Gab, dynamite and blowing tenement houses to hell *do not* produce work. Socialism would destroy the American home. A vote for Ogren is a vote for socialism."

3. *"Socialism* means terror, unrest and financial ruin. None of these citizens want the red flag: The working-

man—who values a steady job. The home owner—who wants it protected. The man with a savings account—who wants it to grow. The young man—who is looking to the future. The minister—whose calling should be honored. The doctor—who is serving humanity. The merchant—who deserves a square deal. The lawyer—who stands for human rights. The plain, substantial citizen—who puts patriotism and civic pride before class prejudice and sectional hatred.

"No woman can be true to herself and her home and vote for socialism. No mother—who has a son or daughter. No first voter—who regards the ballot justly. No housewife—who loves her home and family. No club woman—who knows the needs of womanhood. No woman wage earner—who knows the evils of business unrest. No professional woman—who knows the danger of epidemics. No church member—who appreciates the sanctity of her church. No school teacher—who wants sanity to prevail. No student—who understands American tradition. Not one of these women would be spared—were the wild dreams of socialists given official sanction. A vote for *Ogren* is a vote for socialism. Vote for Bennett and preserve the peace and good will of Rockford.

"Rockford's socialism is the rankest of all. Not one of the writers in all the socialist propaganda could be more violent than this one. A vote for *Ogren* is a vote for this platform. * * * Do you want Rockford to become the testing ground for every wild scheme which might be presented by men who urge the use of dynamite and blowing tenements to hell? *Rockford is in danger. It needs every vote.* A vote for Ogren is a vote for socialism."

The three articles all contained the following words and sentences at the respective places in the articles as above copied where the stars or asterisks occur and are to be considered as inserted in each article at the places thus indicated, to-wit: "Read what Oscar Ogren, now candidate

for mayor, said at a public meeting at the Majestic Theatre, February 12, 1915: 'We don't want work. What we want is a division of those profits that have already been made. I am a rebel. There are men out there in this audience that are just as big rebels as I am, but they haven't the gift of gab that I have. If you really want work I know where to make it, and I am in favor of going into Chicago and taking dynamite and blowing those tenement houses to hell!'" The words just quoted were printed near the center of the newspaper article first printed, with a heavy border around it, with a hand pointing towards it from either side. In the second article both speeches of Ogren, in the council and in the theatre, were printed near the center of the article, side by side, with a light border around each. In the third article the words of Ogren alleged to have been spoken at the theatre are near the center of the article or page, with a light border around it and with a hand on the left pointing to it and these words printed under the hand and immediately at the left of the left-hand border: "A vote for Ogren is a vote for this platform."

There was a fourth count to the declaration which combined the charges in all three of the other counts, or, rather, made the three publications as the basis of that count. It is a good cause of demurrer in actions at law under the common law system of pleading that two or more causes of action are joined in one and the same count of the declaration. When they are so joined the count is double and for that reason demurrable. Declarations for libel follow the same rule. Two or more causes for separate libels or slanders may be united in one declaration but should not be blended in one and the same count. (13 Ency. of Pl. & Pr. 60.) The publications are all distinct publications, and the latter two are not continuations of an incompleted publication or charge.

The defendant filed the general issue and three special pleas,—one to each of the other three counts of the dec-

laration. The substance of the first special plea is that the plaintiff was a candidate for mayor of Rockford on the socialist ticket and that there were other socialist candidates for other offices of the city on said ticket; that there then existed in said city a political and propagandist organization known as the socialist party, which was devoting itself to the alleged principles, doctrines and proposals of socialism; that plaintiff, as such candidate, represented that party and all its alleged principles, doctrines and proposals; that as publisher of its daily newspaper it was defendant's privilege and duty to publish for the information of its patrons and the city of Rockford the alleged principles and doctrines and proposals of any political party nominating candidates for said offices and report the attitude and beliefs of any such candidates upon governmental, municipal, civic and social questions; that in accordance with its right and duty defendant did on said date publish in its newspaper of and concerning socialism, but not of and concerning the plaintiff, certain matters, the certain matters being all of said article except the alleged words spoken by plaintiff at the theatre and the last sentence of said article and one other sentence. In the same plea the defendant justified by averring that Ogren did in a public speech utter the words alleged to have been spoken at the theatre, and also by averring that it was true that plaintiff was then making sugar-coated and misleading speeches to get votes, as charged in said article. The last sentence of said article was not covered by any averments in the plea. A similar plea was filed as to the second and third counts, wherein the defendant likewise averred that it published certain parts of the second and third articles of and concerning socialism and justified as to certain other parts in the same plea, and failed to plead at all as to other sentences in the article.

Plaintiff by leave replied doubly to the special pleas, after joining issue on the plea of the general issue. By his second replication plaintiff denied the allegations in all the

special pleas.    His third replication was to the effect that even though the defendant published certain matters of and concerning socialism, only, yet persons who read the articles understood such parts to have been published of and concerning the plaintiff.    It is sufficient to say that plaintiff shows no ground for complaint at the court's sustaining a demurrer to his third or special replication.    If any such matters are proper at all they were admissible under the issues previously found.    It is not insisted that the demurrer should have been carried back to any of the special pleas, and no such motion or action appears to have been insisted on by plaintiff in the lower court.

The plea of justification must be as broad as the charge and requires certainty of averment.    (17 R. C. L. 400.)    It should contain no other averments except the matters justified.    If one is guilty of publishing the whole of the alleged defamatory matter he cannot justify by showing that some part of the defamatory matter, though divisible from the rest, was true.    (17 R. C. L. 401.)

The articles published as aforesaid are libelous *per se.* It will be observed that none of the articles charge plaintiff with a crime.    The most that can be said in that regard is that they charge him with favoring crime,—that is, blowing up tenement houses with dynamite.    It is by the language of the articles clear that they do charge him with being one of the rankest of socialists.    In the third article it is charged that Rockford's socialism is the rankest of all, and that not one of the writers in all the socialist propaganda could be more violent than this one.    The declaration charges that the words "this one" mean or refer to plaintiff, and there can be no doubt that this is true.    The plaintiff was the main subject of the article.    It was his election as mayor that was referred to as the great menace to the citizens of Rockford.    The article did refer to socialism also as the danger, but further charged that a vote for plaintiff was a vote for socialism, and evidently means Rockford's

socialism, "the rankest of all,"—the socialism that "means terror, unrest and financial ruin" to men and women of Rockford,—and recommended as the only remedy a vote against Ogren or for Bennett, to "preserve the peace and good will of Rockford." It would seem that there is no escaping it that such words were spoken of and concerning the plaintiff, and, by charging him with making the two speeches or alleged statements at the council meeting and at the theater building, the second article in substance charged that he himself had declared himself as a man who would by his official acts be opposed to and decide against corporations, right or wrong, upon all questions; that he was in favor of a division of profits already made and without further work,—a rebel against the present system and in favor of blowing up tenement houses, etc. There can be no question that such charges tend to impeach the honesty, integrity and reputation of plaintiff and to expose him to public hatred, contempt and ridicule. Section 177 of our Criminal Code defines libel as a malicious defamation, expressed by printing or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation or publish the natural defects of one who is alive, and thereby to expose him to public hatred, contempt, ridicule or financial injury. Under such a statute it is not necessary to charge one with a crime to make the charge libelous *per se*. *Cerveny* v. *Chicago Daily News Co.* 139 Ill. 345; *Dowie* v. *Priddle,* 216 id. 553; *People* v. *Fuller,* 238 id. 116.

Where the words are ambiguous or equivocal in meaning, the question of the meaning to be ascribed to them is for the jury, although the question as to whether or not any particular meaning is libelous is for the court. Where there is a controversy as to whether or not words were spoken of and concerning the plaintiff, the question whether they were so spoken is for the jury. (*Ball* v. *Evening American Publishing Co.* 237 Ill. 592.) In this case the

defendant by its special pleas denies that certain portions of the articles were spoken of plaintiff,—a defense which is admissible under the general issue. Plaintiff offered witnesses to prove that by the language of the articles they understood the words in question to be spoken of and concerning plaintiff, but on objection the court refused to admit the evidence. We think the better rule is, that where the language is clear and unambiguous, as it is in this case, and such as there can be little or no doubt of its being spoken of and concerning plaintiff, no such evidence is admissible for plaintiff in the first instance, but if the defendant disputes the fact and offers evidence to prove it,—where, as here, the evidence also refers to another person or object,—then it would be proper for the plaintiff to offer proof on the question in rebuttal. No such evidence was given for the defendant, and we hold the court did not err in this particular.

The court committed error in excluding all of the first article except the alleged words of plaintiff spoken by him at the Majestic Theatre. The whole article set out in the declaration should have been admitted, so that the meaning of the same could be fully and properly understood.

The defendant, in introducing its proof under the pleas of justification, submitted the matter sought to be justified in each instance by delivering the published articles to the witnesses, and, after first calling their attention to these matters, asked the witnesses if the plaintiff spoke those words at the council meeting and at the Majestic Theatre. After reading the matters thus offered the witnesses answered in each instance, "Yes," over the objection of the plaintiff that the question was leading. This was error. The question could not well be more leading and more suggestive of just what answer was wanted, which is one of the real tests of whether or not a question is leading. The question furnished the witnesses in advance the full information as to what the defendant's claim was that plaintiff did say on

those occasions, and relieved the witnesses of testifying as to what they really remembered to have been spoken.

It was also error to admit evidence, in substance, that a number of writers on socialism had declared that the church as it exists is a capitalistic institution and under socialism must go. It was for similar reasons absolutely improper to introduce certain passages in certain books, one by Bernard Shaw, another by Morris and Bax, and still others, who were foreigners who had lived in Europe, and also an article from a socialist newspaper. Most all of these books contained very radical chapters attacking the indissolubility of marriage and our marriage laws, and advocating that a man should be allowed to discard his wife when he is tired of her, and the wife the husband when she is tired of him. There was no proof that plaintiff was a believer in that doctrine or had ever advocated it or had ever read those books. The defendant's own witness who identified the books expressly testified that the socialist party of America had never adopted such books, and was quite sure that the socialist party of Rockford never had adopted any of the sentiments contained in the extracts read from said books. They were hearsay evidence of a low order, and the rule has ever been that such books and newspapers are inadmissible as original evidence in trials before courts. (3 Jones' Commentaries on Evidence, secs. 578-582.) Of the same character of objectionable evidence, and of the most prejudicial character, was the proof admitted that President Wilson refused passports to Europe to Berger, of Milwaukee, and to Lee and Hillquit, of New York,—American socialists. The grounds of the President's refusal were not proved or even suggested, and if such proof had been made, the evidence had no tendency to prove any issue in this case and could only serve to prevent a fair and impartial trial.

Section 4 of article 2 of the constitution of Illinois provides: "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that lib-

erty; and in all trials for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense." This section clearly and unequivocally lays down the full and correct rule for this State, when the truth is a defense to a libel, in both civil and criminal suits. It appears this is the first time the question has been raised in a civil suit since our last constitution was adopted, but there is no mistaking the meaning of that section, which is, that the truth is a defense in both civil and criminal suits only when published with good motives and for justifiable ends. The above section of the constitution is clear and unequivocal, and states a sufficient and definite rule by means of which a defendant may establish a defense to a publication that is libelous in its character. It is, therefore, self-executing and needs no statute to put it in force. (Cooley's Const. Lim.—4th ed.—sec. 82, p. 101.) Our statute does not make any provision on the question except to provide that it shall be competent for the defendant to establish the truth of the matter charged by a preponderance of testimony. Our attention has been called to the decision of *Castle* v. *Houston,* (Kan.) 27 Am. Rep. 127, which, it is claimed, holds otherwise. The constitution of Kansas is differently worded, and that decision is based on the ground that the word "accused" has reference to a party indicted or charged criminally, and not to a defendant in a civil suit. The language construed is, "in all civil or criminal actions for libel the truth may be given in evidence to the jury, and if it shall appear that the alleged libelous matter was published for justifiable ends the accused party shall be acquitted." The Nebraska constitution is exactly like ours, and in *Wertz* v. *Sprecher,* 82 Neb. 834, the court construed the constitution, and held that truth, alone, is not a complete defense in a civil action for libel, and if the defendant justifies he must further allege and prove that he published the defamatory matter with good motives and for justifiable ends. The Supreme

Court of Florida makes a similar holding upon a similar provision in its constitution, in *Taylor* v. *Tribune Publishing Co.* 67 Fla. 361.  At common law the rule was that truth of the alleged libel, when established, was a defense, and that was the law in this State before our last constitution was adopted.

It is not the privilege or duty of one publishing a newspaper to publish libelous matter against any candidate for public office.  Such person has no more right or privilege in that regard than any other person in the same community.  The liberty of free speech and of free press is the same in that regard.  When anyone becomes a candidate for a public office, conferred by the election of the people, he is considered as putting his character in issue, so far as it may respect his fitness and qualifications for office, and everyone may freely comment on his conduct and actions. His *acts* may be canvassed and his *conduct* boldly censured. But the publication of falsehood and calumny against public officers or candidates for such offices is an offense most dangerous to the people and the subject of punishment, because the people may be deceived and reject the best citizen, to their injury.  An intention to serve the public good in such a case cannot authorize or justify a defamation of private character.  (*Rearick* v. *Wilcox*, 81 Ill. 77; *Sweeney* v. *Baker*, 31 Am. Rep. 757; *Jones* v. *Townsend's Admx.* 58 id. 676.)  To a malicious publication of libelous matter against a candidate for public office there is no defense on the ground that it is privileged, and it is not a defense that it is mistakenly and honestly made.  Such matters go only in mitigation of damages.

A number of instructions are challenged and discussed as erroneous as given by the court.  We have virtually settled all those questions in the holdings already made and we deem it of no value to further discuss the instructions in detail, as the errors, where error is committed, may be avoided on another trial.

288 – 27

In view of what has already been said it seems to us proper to suggest that the pleas of the defendant ought to be re-drawn and the issues correctly presented according to the views herein expressed. Matters of mitigation, only, are admissible under the general issue and should not be mixed up with matters of justification in the same plea. The same is true of matters which amount only to a denial of the charge. As indicated, the case will have to be reversed for the errors already pointed out in this opinion.

It is finally called to our attention by various affidavits and admissions of the jurors and of the defendant that the entire jury, or about all of them, were each treated to a box of cigars and given six months' free subscription to the defendant's paper after the trial was over. While this may not have affected the verdict of the jury, we feel constrained to say that no litigant owes any jury one penny or any unusually friendly acts or demonstrations of any kind for an honest verdict. Presents should not be given to or be received by a juror in any case. Such acts must necessarily produce bad impressions, no matter how good the intentions may be and however harmless they may in fact be to the loser. It does appear, however, that one or two of the jurors saw, and may have read, the comments of the defendant made in its newspaper during the progress of the trial, and in which it was also related how the judge rescued the jury from confinement by overruling plaintiff's motion to have the jury kept together and not allowed to separate, etc. It is the absolute duty of the court to instruct the jury so positively and so firmly in a case of so much notoriety and feeling that no juror would be likely to see newspapers printing matters of evidence or other comments on the proceedings. It has full power to take whatever steps are necessary to the securing of a fair trial, by instructing the jury, holding it together, removing newspaper reporters from the court room, if necessary, or by such other acts as will prevent a recurrence of matters of

which complaint is here made, and it should do so without either party being censured by the jury for the court's actions.

The judgment of the circuit court is reversed and the cause remanded.                    *Reversed and remanded.*