**Oscar H. Ogren, Plaintiff in Error, v. Rockford Star Printing Company, Defendant in Error.**

**Gen. No. 7,453.**

1. LIBEL AND SLANDER—*when publication against candidate not privileged.* There is no defense on the ground of privilege to a malicious publication of libelous matter against a candidate for public office.

2. LIBEL AND SLANDER—*definition of "libelous matters."* "Libelous matters" mean such publications as are made falsely, through malice and without good motives and not for justifiable ends.

3. LIBEL AND SLANDER—*sufficiency of special plea of privileged publication.* Special pleas in an action for libel properly set up the legal right and duty of the newspaper defendant, which charged that it was the privilege and duty of the defendant newspaper to publish, for the information and instruction of its patrons and of the people, statements and reports representing the alleged policies, doctrines and proposals of any political party which nominated a candidate for public office and to state and report the attitude and belief together with the public expressions of the candidates upon civic, social and other questions.

4. LIBEL AND SLANDER—*sufficiency of special plea of privileged*

*publication.* A special plea, in an action for libel, stated facts sufficient to give the defendant newspaper the right to tell the truth about a political organization and its candidates and issues by alleging in substance the existence, in the city in question, of an organization affiliated with the general socialist party, which devoted itself to the promulgation of socialism; and that plaintiff was nominated by such socialist party for mayor and that he accepted the nomination and represented the socialist party and its principles and doctrines, and that he was actively engaged in campaigning the city for votes and had made the speeches and other statements as charged in the declaration, and that the publication was made to enlighten the voters as to the issues of the election and the merits of the candidates, all for good motives and justifiable ends, and without malice.

5. LIBEL AND SLANDER—*publication charging socialism as libelous.* A publication stating that the real issue before the voters in an election was socialism, was not libelous.

6. LIBEL AND SLANDER—*construction of special plea as entirety.* All the language used and all the matters and things averred in a special plea in an action against a newspaper by a candidate for public office are to be taken in their entirety in determining whether there is set up such a statement of facts that will permit the defendant to submit the question as to whether or not the publication was made with good motives, without malice and for justifiable ends.

7. LIBEL AND SLANDER—*right of defense to libelous publication.* A defendant in an action for libel may establish a defense to a publication that is libelous in its character.

8. PLEADING—*party not required to plead to exhibits.* The defendant in an action for libel was not called upon to answer or plead to that portion of the declaration purporting to be merely an exhibit consisting of copies of the publications in question.

9. PLEADING—*exhibits attached to declaration as surplusage.* An exhibit attached to a declaration must be treated as mere surplusage, and as serving no purpose as a pleading.

10. HARMLESS ERROR—*harmlessness of ruling as to deposition where cause decided on pleadings.* Error could not be assigned upon the refusal to suppress a deposition, where the motion to suppress was passed upon prior to the time of passing upon the demurrer to special pleas, and where the plaintiff elected to stand by his demurrer, so that no evidence was necessary, and the action of the court in sustaining the pleas was not based in any way upon the deposition.

Error by plaintiff to the Circuit Court of Winnebago county; the Hon. E. D. REYNOLDS, Judge, presiding. Heard in this court at

Ogren v. Rockford Star Printing Co., 237 Ill. App. 349.

the October term, 1924. Affirmed. Opinion filed June 27, 1925. *Certiorari* denied by Supreme Court (making opinion final).

ROY F. HALL, for plaintiff in error.

FISHER, NORTH, LINSCOTT & GIBBONEY and WILLIAM L. PIERCE, for defendant in error.

MR. JUSTICE JETT delivered the opinion of the court.

Oscar H. Ogren, plaintiff in error, hereinafter known as plaintiff, began this suit in the circuit court of Winnebago county against the Rockford Star Printing Company, hereinafter known as defendant, to recover damages for the publication of three alleged libels. A jury trial was had and the jury returned a verdict of not guilty and judgment was rendered against the plaintiff.

A writ of error was sued out of the Supreme Court and jurisdiction invoked on the ground that a constitutional question was involved. The case was reversed and is reported in 288 Ill. 405. At the time of the institution of this proceeding, the declaration consisted of four counts. The Supreme Court held the fourth count bad because two or more causes of action for libel were relied upon in said count. Upon the case being redocketed in the circuit court of Winnebago county, the case stood for trial in that court on the first three counts. It appears from the declaration that the plaintiff had lived in Rockford for many years and had worked at different occupations, served two terms in the city council, and was at the time of the publications, alleged to have been libelous, a candidate for mayor on the socialist ticket. In the election in question he had as his opponent W. W. Bennett. The alleged libelous articles were published by the defendant in the manner of advertisements, during the campaign that was being carried on for the election of mayor and other city officers in the City of Rockford, one at a time on three different days,

namely: April 15, 16 and 17, 1915, in the Rockford Morning Star. Each article was made the subject of a count in plaintiff's declaration. In so far as they are made a part of the declaration, and appear in the abstract, they are copied verbatim in the order in which they were published and are numbered respectively 1, 2 and 3, to wit:

1. "The real issue is socialism. Rockford faces a calamity. Without evasion or digression, the real impending and fearful cloud hanging over Rockford today is, The Menace of the Red Flag. Do you want to turn Rockford over to that emblem? * * * This is a typical expression of socialistic thought. Do not be deceived by sugar-coated and misleading speeches being made on the stump now by Mr. Ogren to get votes. Stop and think. Find out what socialism really is. Meet the issue without passion or prejudice. Before you decide how you will vote next Tuesday, inform yourself. A vote for Oscar Ogren will be a straight vote for socialism."

2. "Twenty-five new industries have been established in Rockford during the past four years. Will one industry locate here if we elect a mayor who, upon taking his seat in the council, made this statement? Statement by Alderman Oscar Ogren on taking his seat in council May 3, 1909: 'I have been elected by the socialist party of my ward. All my votes and actions while in this council will be in direct opposition to all corporations, regardless of what the question or the issue is. That is why I am here—that is my mission in the council.' * * * Honest working men want work. Gab, dynamite and blowing tenement houses to hell, do not produce work. Socialism would destroy the American home. A vote for Ogren is a vote for socialism."

3. "Socialism means terror, unrest and financial ruin. None of these citizens want the red flag; The working man—who values a steady job. The home owner—who wants it protected. The man with the savings account—who wants it to grow. The young man—who is looking to the future. The minister—

whose calling should be honored. The doctor—who is serving humanity. The merchant—who deserves a square deal. The lawyer—who stands for human rights. The plain, substantial citizen—who puts patriotism and civic pride before class prejudice and sectional hatreds.

"No woman can be true to herself and her home and vote for socialism. No mother—who has a son or daughter. No first voter—who regards the ballot justly. No housewife—who loves her home and family. No club woman—who knows the needs of womanhood. No woman wage earner—who knows the evils of business unrest. No professional woman—who knows the danger of epidemics. No church member—who appreciates the sanctity of her church. No school teacher—who wants sanity to prevail. No student—who understands American tradition. No one of these women would be spared—were the wild dreams of socialists given official sanction. A vote for Ogren is a vote for socialism. Vote for Bennett and preserve the peace and good will of Rockford."

"Rockford's socialism is the rankest of all. Not one of the writers in all the socialistic propaganda could be more violent than this one. A vote for Ogren is a vote for this platform. * * * Do you want Rockford to become the testing ground for every wild scheme which might be presented by men who urge the use of dynamite and blowing tenements to hell? Rockford is in danger. It needs every vote. A vote for Ogren is a vote for socialism."

The articles all contain the following words and sentences at the respective places in the articles as above copied where the stars or asterisks occur, and are to be considered as inserted in each article at the places thus indicated, to wit:

"Read what Oscar Ogren, now candidate for mayor, said at a public meeting at the Majestic Theater, February 12, 1915: 'We don't want work. What we want is a division of those profits that have already been made. I am a rebel. There are men out there in this audience that are just as big rebels as I am, but they haven't the gift of gab that I have. If you really want work, I know where to make it, and I am in

favor of going into Chicago and taking dynamite and
blowing those tenement houses to hell.'"

Upon the cause being redocketed in the circuit
court, the defendant pleaded the general issue and
three special pleas. The special pleas replied to the
three counts of the declaration respectively. Each of
the special pleas set up that the Rockford Morning
Star was a newspaper published and circulated daily
in the City of Rockford, and that it was the privilege
and duty of such paper to publish for the information
and instruction of its patrons, and of the people, state-
ments and reports representing the alleged policies,
doctrines and proposals of any political party which
nominated a candidate for public office in said city, and
also to state and report the attitude and beliefs and
public expressions of any and all of such candidates
upon governmental, municipal, civic and social ques-
tions. It is then averred that for a considerable time
prior to the time of the alleged publications, there ex-
isted in the City of Rockford a political and propa-
gandist organization, which said party, or organiza-
tion, was a branch of and affiliated with the general
socialist party or organization, which during all of the
time aforesaid devoted itself to the promulgation of
the alleged principles, doctrines and proposals of so-
cialism. In said special pleas it is further averred
that the socialist party nominated the plaintiff as a
candidate for the office of mayor of the City of Rock-
ford, and also nominated other individuals as candi-
dates for other city offices; that the plaintiff had ac-
cepted said nomination and represented the said so-
cialist party and its alleged principles, doctrines and
proposals before the people of the City of Rockford,
and was then actively engaged in campaigning said
city for votes. The pleas then state that the defend-
ant did publish in its newspaper of and concerning
socialism, and of and concerning the plaintiff, the
matters which constitute the published articles set
forth. In brief, the special pleas set up in detail the

existence of the socialist party, that the plaintiff was its candidate for mayor, regularly nominated; that he had made the speeches and other statements as charged in the declaration; that the publication was said of and concerning the plaintiff, and of and concerning socialism, all for the purpose of bona fidely enlightening the voters of the city as to the issues of the election, and the merits of the candidates, all for good motives and for justifiable ends, and wholly without malice. The plaintiff demurred generally and specially to the three special pleas. The court overruled the demurrer and the plaintiff, having neglected to plead further, judgment was rendered against him by the court for costs of suit, and he brings this case to this court by writ of error.

It is the contention of the plaintiff that the Supreme Court, in its opinion, when this cause was heard by it, held that the articles published are libelous *per se,* and that the only good motives and justifiable ends stated in the pleadings were that it was the privilege and duty of the defendant to publish the articles; that the court also held that there was no such privilege or duty and that it did not constitute a defense. Plaintiff also insists that whatever is averred in the pleas is done by way of conclusions and that no facts are pleaded. There appears to be, from the arguments of the respective parties to this proceeding, much controversy as to what the court did hold to be the law in cases of this character under section 4, article II, of the Constitution which reads as follows: "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty; and in all trials for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense."

The court, after quoting the above constitutional provision, on page 416 said: "This section clearly and unequivocally lays down the full and correct rule for this State, when the truth is a defense to a libel,

in both civil and criminal suits. It appears this is the first time the question has been raised in a civil suit since our last constitution was adopted, but there is no mistaking the meaning of that section, which is, that the truth is a defense in both civil and criminal suits only when published with good motives and for justifiable ends. The above section of the constitution is clear and unequivocal, and states a sufficient and definite rule by means of which a defendant may establish a defense to a publication that is libelous in its character. It is, therefore, self-executing and needs no statute to put it in force."

Plaintiff, in his argument, quoted quite freely from the decision of the court as found on page 417, and insists that from the meaning of the language used it precludes the right to publish the articles declared upon.

The effect of the argument is that it is impossible to properly plead a right, duty and privilege, as is contended for by the defendant. In assuming this position, plaintiff overlooks an important part of the opinion from which he quotes where it says that: "It is not the privilege or duty of one publishing a newspaper to publish *libelous matter* against any candidate for public office. Such person has no more right or privilege in that regard than any other person in the same community," that the court was speaking of "libelous matter," that it had in mind the "falsehoods and calumny" against public officers and of "malicious publication and libelous matters."

As we understand the opinion of the court, and the construction we place on the language thereof, the "libelous matters," mean such publications as are done falsely, through malice and without good motives, and not for justifiable ends. The court does not hold that the defendant could not publish the alleged libelous articles, if the same were published with good motives, and for justifiable ends, if it assumed the truth of the publications. The court did say: "That

when any one becomes a candidate for public office, conferred by the election of the people, he is considered as putting his character at issue, so far as it may respect his fitness and qualification for office, and every one may fully comment on his conduct and actions. His acts may be canvassed and his conduct boldly censured.'' The court, in view of the provision of the constitution, holds that an article published may be privileged if published for the purpose of informing the public of the merits of the issues involved, and of the character of a candidate for office in order that the voters may intelligently choose, if the facts therein be true and were published without malice and with good motives and for justifiable ends. To a malicious publication of libelous matter against a candidate for public office there is no defense on the ground of privilege. If a matter is published for the purpose of informing the public of the things the candidate stands for, and of his character and history, then it would not be a malicious publication, and if it is not a malicious publication it can be defended against if the matter published is true, and done with good motives and for justifiable ends.

We have, therefore, reached the conclusion that the construction placed upon the decision of the court by the plaintiff is not correct. It is also insisted that the special pleas are bad because no facts are pleaded and that the averments consist of mere conclusions. The general and fifty-nine special demurrers to the three special pleas are the result, in our opinion, of the construction placed by the plaintiff upon the holding of the Supreme Court. The plaintiff in his argument says: ''The points made against each of these pleas are that each plea seeks to show good motives and justifiable ends, but in each case what constitute the good motives and justifiable ends is that the newspaper had a privilege and a duty and a right to make publication, whereas this court (meaning the Supreme Court, this cause having been transferred by that

court) held that there was no such privilege, duty or right.'' It will readily be seen from the above quotation from the argument of the plaintiff that he is in error in the construction he places upon the decision of the court. The question now is, do the pleas set up facts giving the defendant the right to insist upon the defense relied upon in this proceeding? Each of the special pleas charges that the Rockford Morning Star was a newspaper published and circulated in the City of Rockford, and that it was the privilege and duty of such paper to publish for the information and instruction of its patrons, and of the people, statements and reports representing the alleged policies, doctrines and proposals of any political party which nominated a candidate for public office in the city and to state and report the attitude and beliefs, together with the public expressions of any and all such candidates, upon governmental, municipal, civic and social questions. It was certainly the legal right and duty of any newspaper to make such publication. It is through the medium of the public press that the people, more or less, become informed of the record of candidates for office, and of the principles for which they stand and advocate. If this right is abridged then those who are called upon to make a choice between candidates will be deprived of a means to become fully informed of the candidates and what they represent.

The first plea further states that prior to the time of the alleged publication there existed in the City of Rockford a political and propagandist organization, which was a branch of and affiliated with the general socialist party organization, which devoted itself to the promulgation of the principles, doctrines and proposals of socialism; that the socialist party nominated the plaintiff as a candidate for the office of mayor of the City of Rockford at an election to be held, and also nominated other candidates for city offices; that the plaintiff had accepted the nomination; that he repre-

sented the socialist party and its principles, doctrines and proposals before the people of the City of Rockford, and was then actively engaged in campaigning the city for votes.

In our opinion, these averments are statements of fact; facts sufficient to give a newspaper the right to tell the truth about any political organization and its candidates and issues. It is then stated in the plea that in accordance with such right the defendant did publish in its newspaper, of and concerning socialism and of and concerning the plaintiff, the matters which constitute the published article set forth, and that as the plaintiff was the avowed candidate for the office of mayor of the socialist party, and having accepted the nomination for that office, "That a vote for said plaintiff for said office, at said election, would be and constitute a straight vote for socialism." The principal objection to the first plea is to the language last above quoted. Since the first special plea sets forth in detail that there existed in the City of Rockford a political organization which was a branch of and affiliated with the general socialist party organization, which devoted itself to the promulgation of the principles, doctrines and proposals of socialism, that the socialist party nominated the plaintiff as candidate for the office of mayor and that he had accepted the nomination, that he represented the socialist party and its principles, it therefore naturally follows as a fact that a vote for the plaintiff would be a vote for socialism. If this language was not found in the plea at all the plea would be sufficient, after having set forth in detail the situation relative to the party, its belief, the candidacy of the plaintiff and his utterances, and the result would necessarily follow that a vote for the plaintiff would be a vote for socialism. It is also insisted that the said first special plea is bad because of the averment that, "the real issue before the voters was socialism." This language is not libelous. Moreover, the plea sets forth in detail a set

of facts which shows, if true, the real issue was socialism. It is said of the averment "the then fearful cloud hanging over Rockford was the menace of the Red Flag" is a conclusion and the plea is therefore bad. The argument on the part of plaintiff is that this language meant that the Red Flag is an emblem of and typifying socialism and socialistic propaganda as advocated and promulgated by him as candidate on the socialist ticket. It will be observed that all that part of the plea which states the fact of the candidacy of the plaintiff, his beliefs, his speeches and socialism as expounded by him, constituted some of the facts on which the statement was made that the fearful cloud hanging over Rockford was the menace of the Red Flag, in the sense and under the meaning as explained in the plea, and we think meets the alleged meaning given to it in the declaration. In relation to the averment, "Do not be deceived by sugar-coated and misleading speeches being made on the stump now by Mr. Ogren to get votes," plaintiff complains that the plea does not state wherein it is misleading or when and where he made such speeches. This statement was evidently made by way of comment. There is no allegation in the declaration by way of innuendo, so we must give to the language its natural, usual and ordinary meaning. The declaration does not undertake to state what the words "sugar-coated" mean nor what is meant by "misleading speeches." The charge is that the defendant did say not to be deceived by the speeches, and the reply was that the plaintiff was making misleading and sugar-coated speeches. The declaration charges he made speeches both in the city council and at the Majestic theater. The plea states that this part of the alleged libelous publication was by way of comment on the statements of the plaintiff, which explains what was meant. Many other objections are made to the first special plea. It is difficult to follow the plaintiff in all of his contentions in view of the fact that he selects a sentence

here and there in the plea and insists that it is an averment of a conclusion. When all the language used and all the matters and things averred in the plea are considered together, it is found that the plea in its entirety sets up such a state of facts that will permit the defendant to submit the question as to whether or not the publication was made with good motives, without malice and for justifiable ends.

We do not feel called upon in passing upon the special pleas to go into detail with reference to each particular objection. The objections lap and overlap each other. The same argument that applies to the first special plea is equally applicable to the second and third special pleas. We are of the opinion that the second and third special pleas each present such a state of facts that the defendant should be permitted to go to the jury on the question as to whether or not the publication was made with good motives, for justifiable ends and without malice. Since the rule is that a defendant may establish a defense to a publication that is libelous in its character, we are of the opinion that the special pleas, when considered in the light of the rule as announced in the reported case, present such a state of facts that the defendant should not be precluded from presenting its defense.

It appears that copies of the publications were attached to the declaration as exhibits. An instrument relied upon in a common-law pleading must be set out therein according to its legal effect or *in hæc verba*. Common-law pleading cannot be done by way of exhibits. An exhibit attached to a declaration must be treated as mere surplusage, and as serving no purpose as a pleading. The defendant is not called upon to answer or plead to that portion of the declaration that purports to be merely an exhibit.

Complaint is made of the action of the court in refusing to suppress the deposition of Mahlon H. Day. It appears that the motion to suppress the deposition was passed upon prior to the time of the passing upon

the demurrer to the special pleas. When the plaintiff elected to stand by his demurrer he admitted the truth of all of the pleas that were well pleaded. No evidence was required. The action of the court in sustaining the special pleas was not based in any way upon the deposition.

In conclusion we are of the opinion that the court did not err in overruling the general and special demurrer to the special pleas.

The judgment of the circuit court of Winnebago county is affirmed.

*Judgment affirmed.*