NOTICE
Decision filed 11/02/06. The text of
this decision may be changed or
corrected prior to the filing of a
Petition for Rehearing or the
disposition of the same.

NO. 5-06-0048

IN THE APPELLATE COURT

OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| GORDON MAAG, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Madison County. |
| ILLINOIS COALITION FOR JOBS, GROWTH | ) | No. 04-L-1395 |
| AND PROSPERITY, an Unincorporated | ) | |
| Association; THE ILLINOIS STATE CHAMBER | ) | |
| OF COMMERCE, a Not-for-Profit | ) | |
| Corporation; RONALD GIDWITZ; | ) | |
| and GREGORY BAISE, | ) | Honorable |
| | ) | Patrick W. Kelley, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE KNECHT delivered the opinion of the court:

In the fall of 2004 plaintiff, Gordon Maag, was a member of the Illinois

Appellate Court running for retention in the Fifth Judicial District. He was also a

candidate in a contested race for the Illinois Supreme Court. The dispute in this case

arose from a flyer prepared by the Illinois Coalition for Jobs, Growth and Prosperity

(Coalition) mailed and hand delivered throughout the Fifth District headlined "In

Southern Illinois, the 'Wheels of Justice' have ground to a screeching halt... Gordon

Maag's Record On Crime: embarrassing--and dangerous." The flyer referred to plaintiff

as not thinking a crime was "exceptionally brutal" and "wantonly cruel" when the victim

was stabbed in the face, neck and chest with a butcher knife. The flyer also stated

plaintiff overturned sentences for a murderer, a drug dealer and a sexual predator.

Plaintiff filed a defamation per se action against the Coalition, the Illinois State Chamber

of Commerce, Ronald Gidwitz and Gregory Baise (defendants). Plaintiff alleged the flyer was intended to thwart his bid for retention. The trial court dismissed the action under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2004)).

## I. BACKGROUND

Here, in full, is the flyer on which the complaint is based:

**"In Southern Illinois, the 'Wheels of Justice' have ground to a screeching halt... Gordon Maag's Record On Crime: embarrassing--and dangerous."**

**"Gordon Maag's Record on the Bench: Questionable Decisions Bring Justice to a Grinding Halt**

You'd be surprised to learn about some of Gordon Maag's rulings on the 5th District Court of Appeals. They're one of the reasons employers and jobs have been fleeing southern Illinois...and who can blame them...

**What was he thinking?**

**Judge Maag** reduced a criminal's sentence for a brutal stabbing because he didn't think it was 'exceptionally brutal' and 'wantonly cruel'...the victim was stabbed in the face, neck and chest with a butcher knife.

People v. Romell Johnson, Docket No. 5-99-0637, 333Ill.App.3d935

**Letting a Murderer Back on the Streets**

**Judge Maag** reduced the jail time for a shooting conviction, only to allow the four-time felon to later commit murder.  People v. Marcus Jackson, Docket No. 5-96-0243, 299Ill.App.3d323

**A Mistake with Consequences**

**Judge Maag** reversed a drug dealer's conviction, allowing them [sic] to continue trafficking crack cocaine. People v. Samuel Yarber, Docket No. 5-05-0143, 279Ill.App.3d519

**Questionable Judgment**

**Judge Maag** overturned a 1st degree murder conviction because the jury was not given the correct instructions for a lesser crime ...huh?
People v. Larry Biggerstaff, Docket No. 5-94-0695, 174Ill2d571

**'Technicality' Justice?**

**Judge Maag** turned a man convicted of soliciting the murder of a pregnant woman free, on a technicality.  People v. William Terrell, Docket No. 5-02-0367, 339Ill.App.3d413 [sic]

**Overturning the Conviction of a Sexual Predator**

**Judge Maag** let a convicted child sexual predator back on the streets because the trial judge read the jury

testimony from the six year old victim; the jury had already heard this testimony.

People v. Gary Miller, Docket No. 5-98-0434,

311Ill.App.3d772

**Gordon Maag's decisions caused businesses and jobs to flee southern Illinois. On November 2nd, tell him we can't afford his brand of 'justice' anymore."**

Plaintiff filed a single count complaint on December 20, 2004, alleging defamation <u>per</u> <u>se</u> against all four defendants. It was alleged the Coalition published the flyer "in its own right" and "as agent for the other defendants." Defendants moved to dismiss the complaint under sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2004)) for failure to state a claim on which relief can be granted. The trial court took judicial notice, at the invitation of the parties, of the appellate opinions cited in the flyer, the criminal histories of the defendants referred to in the flyer and the fact plaintiff was a candidate in a contested judicial race when the flyer was dis-tributed. After considering arguments from all the parties the trial court dismissed plaintiff's complaint with prejudice as to all defendants on June 10, 2005. The court found the flyer did not support an allegation of defamation <u>per</u> <u>se</u> as it criticized only plaintiff's actions while a sitting judge and not his private character and did not impute to him fraudulent motive or interest in conducting his duties as a judge.

On June 30, 2005, plaintiff filed a motion to reconsider and motion for leave to amend. Appended to the motion to amend were two proposed amended complaints. The first proposed amended complaint was pleaded in three counts alleging defamation <u>per</u> <u>se</u>, defamation <u>per</u> <u>quod</u> and tortious interference with business

relations. This complaint was to be filed if the trial court allowed plaintiff's motion to reconsider the dismissal with prejudice of plaintiff's original complaint for defamation <u>per se</u>. The second proposed amended complaint was to be filed if the trial court denied leave to replead with respect to defamation <u>per se</u> and included only two counts, one for defamation <u>per quod</u> and one for tortious interference with business relations.

On September 19, 2005, the trial court denied the motion to reconsider and, in so doing, denied plaintiff leave to plead an amended defamation <u>per se</u> count but allowed the filing of the two counts for defamation <u>per quod</u> and tortious interference with business relations. On September 27, 2005, plaintiff filed his first amended complaint with only those two counts.

Defendants filed section 2-615 motions to dismiss the first amended complaint and plaintiff filed a reply. On December 7, 2005, the motions were heard by conference call, and on December 28, 2005, the trial court granted all motions to dismiss with prejudice, finding plaintiff had not alleged extrinsic facts sufficient to establish a claim for defamation <u>per quod</u> given the court's previous ruling that the flyer was not defamatory on its face nor did he allege either special damages or actual malice with sufficient particularity. Finally, the court found a public officeholder did not have sufficient expectancy of continued employment to support a tortious interference with business relations claim.

Plaintiff appeals arguing the trial court erred (1) in finding he failed to state a cause of action for defamation <u>per se</u>; (2) in finding he failed to state a cause of action for defamation <u>per quod</u>; and (3) in finding he failed to state a cause of action for tortious interference with business relations.

## II. ANALYSIS

A. Standard of Review

A dismissal under section 2-615 of the Code is reviewed de novo.  Brandt v. Boston Scientific Corp., 204 Ill. 2d 640, 644-45, 792 N.E.2d 296, 299 (2003).  When ruling on a section 2-615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and reasonable inferences drawn therefrom.  Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 86, 672 N.E.2d 1207, 1213 (1996).  If, after viewing the allegations in the light most favorable to the plaintiff, the complaint fails to state a cause of action on which relief can be granted, the motion should be granted.  Bryson, 174 Ill. 2d at 86, 672 N.E.2d at 1214.

B. Defamation Per Se

A statement is defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with that person.  Bryson, 174 Ill. 2d at 87, 672 N.E.2d at 1214.  A statement may be actionable per se if it is defamatory on its face and fits in one of the limited categories outlined by our supreme court.  Bryson, 174 Ill. 2d at 87, 672 N.E.2d at 1214.  These categories are: (1) words imputing the commission of a criminal offense; (2) words imputing infection with a loathsome communicable disease; (3) words imputing an inability to perform or want of integrity in the discharge of the duties of office or employment; (4) words which prejudice a party or impute lack of ability in his or her trade, profession or business; and (5) words imputing adultery or fornication. Bryson, 174 Ill. 2d at 88-89, 672 N.E.2d at 1214-15.  If the defamatory statement is actionable per se, the plaintiff need not plead or prove actual damages as these statements are thought to be so obviously harmful that injury to a plaintiff's reputation is presumed.  Bryson, 174 Ill. 2d at 87, 672 N.E.2d at 1214.

Defendants contend plaintiff forfeited his right to challenge the dismissal of his claim for defamation per se because he filed an amended complaint which did not reallege that claim.  In fact, plaintiff's motion for leave to file an amended complaint asked for leave to file an amended complaint including a count alleging defamation per se, including additional paragraphs attempting to address the trial court's concerns about the original complaint, as well as additional counts alleging defamation per quod and tortious interference.  Alternatively, considering the trial court's dismissal with prejudice of the original claim for defamation per se, plaintiff requested leave to file an amended complaint alleging only defamation per quod and tortious interference.  The motion for leave to file an amended complaint was combined with a motion to reconsider the trial court's ruling dismissing the original defamation per se complaint.

After hearing arguments, the trial court denied the motion to reconsider and granted the motion for leave to file an amended complaint only as to count II (defamation per quod) and count III (tortious interference).  Thus, the trial court denied plaintiff's attempt to file his claim for defamation per se.  Plaintiff did not abandon the claim by failing to refile and reallege the claim.  He has not forfeited his claim for defamation per se.

We understand plaintiff's outrage with the flyer.  The flyer is full of disparagement and innuendo unbefitting a campaign for judicial office.  Disagreement with a judge's decisions is acceptable and criticism is to be expected.  Expressing such disagreement and criticism in an inflammatory and unreasonable manner is unseemly and unproductive and has no place in what should be a reasoned debate on differing judicial philosophies.

The hysterical hyperbole in the flyer is insulting to the judicial and electoral

˘ 7 ˘

process. It devalues the intelligence of voters, and seeks to make us afraid and cast blame. The flyer is the product of a mindset that believes voter manipulation can be accomplished by resort to phrases that evoke emotion rather than thought. However, ill-informed, mean-spirited hyperbole is not necessarily defamatory per se.

Plaintiff alleges he was defamed by the flyer at issue and it was defamatory per se in that it fell into two defamation per se categories: it imputed he is unable to perform or lacks integrity in performing his employment duties and it imputed he lacked ability or otherwise prejudiced him in his profession. He contends the trial court applied a separate standard to him because he was both a public official and a candidate for public office. Indeed, the trial court noted the flyer at issue would have been defamatory per se if plaintiff had been a private citizen because it did impute both an inability to perform the duties of office or employment and a lack of ability in plaintiff's profession.

We question whether a reader would conclude, based on the content of the flyer, plaintiff lacked integrity or was unable to perform his duties, or lacked ability. Instead, the reader would be likely to conclude plaintiff made judicial decisions with which the authors of the flyer strongly disagreed. The trial court noted the flyer's criticism was limited to plaintiff's decisions and record while in office and not his private life and it did not suggest fraudulent motive or interest on the part of plaintiff in conducting official business. The trial court noted the flyer was disseminated during a hotly contested political campaign where harsh criticisms are to be expected. Unfortunately, reasoned public debate gave way to crass and calculated name-calling for the purpose of partisan advantage. The trial court was correct in making these distinctions from defamatory statements made about a private citizen.

When a person runs for public office, he puts his character in issue so far

as it relates to his fitness and qualifications for office; therefore, his conduct and actions are fair game for comment. Ogren v. Rockford Star Printing Co., 288 Ill. 405, 417, 123 N.E. 587, 592 (1919). "[A candidate's] acts may be canvassed and his conduct boldly censured." (Emphasis in original.) Ogren, 288 Ill. at 417, 123 N.E. at 592.

The flyer at issue here charged plaintiff with bringing justice to a halt with questionable decisions, his record on crime is dangerous and embarrassing, and as a result of plaintiff's decisions, businesses and jobs were supposedly fleeing southern Illinois. None of these charges implied plaintiff was dishonest or had ever committed fraud or engaged in wrongful conduct as a judge. Instead, these charges suggested plaintiff was soft on crime and this "softness" resulted in businesses leaving southern Illinois. While the last assertion is unlikely in a cause and effect analysis, these assertions were all merely opinion as to plaintiff's performance as a judge. None of them were comments on his personal character and, thus, not actionable as defamatory per se.

Further, the alleged defamatory statements in the flyer were nonactionable opinion and not fact. While there is no first amendment privilege for statements of opinion (Milkovich v. Lorain Journal Co., 497 U.S. 1, 19, 111 L. Ed. 2d 1, 18, 110 S. Ct. 2695, 2706 (1990)), a statement will receive first amendment protection from defamation suits if it cannot be reasonably interpreted as stating actual facts about the plaintiff. Milkovich, 497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706. To determine whether a statement implies the existence of facts about the plaintiff, three factors are considered. Hopewell v. Vitullo, 299 Ill. App. 3d 513, 518, 701 N.E.2d 99, 103 (1998). "First, we consider whether the language of the statement has a precise and readily understood meaning, while bearing in mind that the first amendment

protects overly loose, figurative, rhetorical, or hyperbolic language, which negates the impression that the statement actually presents facts." Hopewell, 299 Ill. App. 3d at 518, 701 N.E.2d at 103. Second, whether the context of the statement negates the impression a statement is factual is considered. Hopewell, 299 Ill. App. 3d at 519, 701 N.E.2d at 103. Finally, courts consider whether a statement may be objectively verified as true or false. Hopewell, 299 Ill. App. 3d at 519, 701 N.E.2d at 103.

In determining whether statements are opinion or fact, allegedly libelous language must be evaluated in its broader context to assess whether a reader would have understood the allegation to be a statement of fact. Old Dominion Branch No. 496 v. Austin, 418 U.S. 264, 284, 41 L. Ed. 2d 745, 761-62, 94 S. Ct. 2770, 2781 (1974). Exaggerated rhetoric is commonplace in political campaigns. In this case, the statements were made as part of a hotly contested judicial election. Defendants suggest the flyer is full of rhetoric without substance. This is both a sad and telling admission. It is insulting to voters. If the purpose of the flyer is to sway the electorate, then admitting it has no substance gives insight into what the flyer's authors think of voters and the electoral process. This is not the robust and wide open debate one would hope for in an election. We conclude the statements were "rhetorical hyperbole" or terms "either too vague to be falsifiable or sure to be understood as merely a label for the labeler's underlying assertions." Dilworth v. Dudley, 75 F.3d 307, 309 (7th Cir. 1996).

The statements made in the flyer in reference to specifically cited cases--"What was he thinking?," "Letting a Murderer Back on the Streets," "A Mistake with Consequences," "Questionable Judgment," "'Technicality' Justice?," and "Overturning the Conviction of a Sexual Predator"--while not actual labels placed on plaintiff, would

also fall into the opinion or "rhetorical hyperbole" category of nonactionable language. More troublesome are the actual case citations and summaries underlying each of these printed bullets. These are apparently cited as "facts" supporting the expressed opinions.

The summaries of the cited cases are not completely accurate. Yet, the provision of case citations for each case implies they can be verified as accurate factual assertions. Defendants attempt to explain these inaccuracies by noting the flyer was prepared by "laymen," not lawyers, and therefore some of the intricacies and nuances of the law are not interpreted as they would be by someone with legal training. However, several of the inaccuracies have nothing to do with legal "nuances" but with facts easily identifiable in the written opinions such as where the flyer states plaintiff reduced jail time or let defendants go free when their cases were actually remanded for new trials.

For the most part, the inaccuracies have to do with what was left out--legal explanations as to why certain results were reached, commonly known to laymen as "technicalities"--and the addition of facts which, while apparently true, occurred in the lives of the defendants in the cited cases <u>after</u> plaintiff's involvement in the cited cases had ended and were not verifiable in the cited cases themselves. The thrust of the summaries is that plaintiff participated in rulings that benefited criminal defendants. While simplistic and misleading, it is also true. These are shallow and truncated summaries of judicial decisions designed to generate fear and anger. However, these statements are not actionable as defamatory because they are substantially true even though not accurate in every detail. See <u>Gist v. Macon County Sheriff's Department</u>, 284 Ill. App. 3d 367, 371, 671 N.E.2d 1154, 1157 (1996).

For all of these reasons, we find plaintiff failed to state a cause of action for defamation per se and the trial court properly granted the motion to dismiss.

## C. Defamation Per Quod

A defamation per quod claim is appropriate either where the defamatory character of a statement is not apparent on its face and extrinsic evidence is necessary to demonstrate its injurious meaning or where a statement is defamatory on its face but does not fall under one of the categories of statements which are actionable per se. Bryson, 174 Ill. 2d at 103, 672 N.E.2d at 1221. A plaintiff bringing a per quod claim must also plead and prove special damages to recover. Bryson, 174 Ill. 2d at 103, 672 N.E.2d at 1221. Special damages are "actual damage of a pecuniary nature." Bryson, 174 Ill. 2d at 87-88, 672 N.E.2d at 1214.

Plaintiff does not allege extrinsic evidence to demonstrate the injurious meaning of the statements in the flyer but argues, as he did for his per se claim, the statements are defamatory on their face. As we have found above, the statements in the flyer are not defamatory on their face. As previously noted in our discussion of defamation per se, the alleged defamatory statements were also nonactionable opinion and not fact.

Further, plaintiff has not alleged special damages, i.e., actual damages of a pecuniary nature. He alleged he "has been injured in his personal reputation and in his professional reputation so far as his fitness to sit on the appellate court is concerned"; he "suffered personal humiliation, mental anguish and mental suffering"; and he lost the salary and benefits of an appellate court judge. The first two categories do not qualify as "special damages" as "general allegations such as damage to one's health or reputation, economic loss, and emotional distress are insufficient to state a

cause of action for defamation per quod." Kurczaba v. Pollock, 318 Ill. App. 3d 686, 694, 742 N.E.2d 425, 433 (2000).

As for the loss of plaintiff's position as an appellate judge, apparently no Illinois appeals court has addressed this issue. However, it has been held to be fatal to a claim for defamation per quod to fail to allege the flyer caused the candidate to slip in the polls. Plaintiff did not identify any voter who was otherwise inclined to vote for him and failed to do so because of the flyer, and plaintiff did not allege he slipped in the polls. See Bauer v. Ribaudo, 975 S.W.2d 180, 182 (Mo. App. 1998); Carey v. Pulitzer Publishing Co., 859 S.W.2d 851, 857 (Mo. App. 1993). Many factors determine the outcome of an election (see Southwestern Publishing Co. v. Horsey, 230 F.2d 319, 322-23 (9th Cir. 1956)). To say the flyer cost plaintiff the election is "far too speculative and uncertain to entertain" as special damages. Aycock v. Padgett, 134 N.C. App. 164, 168, 516 S.E.2d 907, 910 (1999). The trial court was correct in dismissing plaintiff's claim for defamation per quod.

D. Tortious Interference

To state a cause of action for tortious interference with prospective economic advantage, plaintiff must allege (1) reasonable expectancy of entering into valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) intentional and unjustified interference by the defendant inducing or causing a breach or termination of the expectancy; and (4) damages to the plaintiff resulting from such interference. Anderson v. Vanden Dorpel, 172 Ill. 2d 399, 406-07, 667 N.E.2d 1296, 1299 (1996). The trial court found plaintiff failed to satisfy the first element because "a public office holder *** does not have a sufficient expectancy of continued employment to support a tortious interference claim."

We agree with the trial court's assessment.  An elected office is not a property interest or a contractual right with which an officeholder has a recognizable "reasonable expectancy" of continued employment as one might in an employment setting.  Apparently no Illinois appeals court has addressed this issue. We, as did the trial court, decline plaintiff's invitation to follow California authority on this issue.  The trial court was correct in dismissing plaintiff's claim for tortious interference.

## III. CONCLUSION

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.


SPOMER, P.J., and APPLETON, J., concur.

NO. 5-06-0048

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

GORDON MAAG,
        Plaintiff-Appellant,

v.

ILLINOIS COALITION FOR JOBS, GROWTH
AND PROSPERITY, an Unincorporated
Association; THE ILLINOIS STATE CHAMBER
OF COMMERCE, a Not-for-Profit
Corporation; RONALD GIDWITZ;
and GREGORY BAISE,

        Defendants-Appellees.

)  Appeal from
)  Circuit Court of
)  Madison County.
)  No. 04-L-1395
)
)
)
)
)
)  Honorable
)  Patrick W. Kelley,
)  Judge, presiding.

---

**Opinion Filed**:      November 2, 2006

---

**Justices**:     Honorable James A. Knecht, J.

                Honorable Stephen L. Spomer, P.J., and
                Honorable Thomas R. Appleton, J.,
                Concur

---

**Attorney
for
Appellant**
    Rex Carr, The Rex Carr Law Firm, LLC, 412 Missouri Ave.,
    East St. Louis, IL 62201

---

**Attorneys
for
Appellees**
    Richard J. O'Brien, Eric S. Mattson, Tracy A. Braun, Jordan
    S. Ginsberg, Sidley Austin LLP, One South Dearborn Street,
    Chicago, IL 60603; Justin A. Reichert, Bruce Stratton,
    Stratton, Giganti, Stone & Kopec, 725 South Fourth Street,
    Springfield, IL 62703; Tyrone C. Fahner, John M. Touhy, J.
    Gregory Deis, Mayer, Brown, Rowe & Maw, LLP, 71 South Wacker
    Drive, Chicago, IL 60606