(No. 69528.—

JAMES H. STACKE, as Executor of the Estate of George A. Bates, Deceased, Appellee, v. MARY LUISE BATES, Appellant.

*Opinion filed October 4, 1990.*

Stephen H. Katz and Julie DeLara, of Waukegan, and Jeffrey Lawrence, of Kelley, Kelley & Kelley, of Schaumburg, for appellant.

Robert M. Ward, of Allegretti & Witcoff, Ltd., and James J. Carroll, of Sidley & Austin, all of Chicago, and Perry G. Callas and Robert J. Wagner, of Bishop, Callas

& Wagner, of Crystal Lake, for appellee.

JUSTICE RYAN delivered the opinion of the court:

In this dissolution of marriage case, the circuit court of McHenry County entered an order directing James H. Stacke, as executor of the estate of George A. Bates, deceased (the estate), to pay Mary Luise Bates equitable maintenance during the estate's appeal of a maintenance-in-gross order. George A. Bates, Mary Luise Bates' former husband, had died three years prior to the entry of these orders. The estate petitioned the appellate court for a stay of the equitable maintenance order. The court granted the stay and Mrs. Bates then filed a petition for leave to appeal in this court contending that the appellate court abused its discretion in issuing the stay. We affirm the appellate court order.

The genesis of this litigation was in 1980, and since that time there have been two appellate court opinions which detail the facts surrounding the marriage and address the numerous other issues already litigated. (141 Ill. App. 3d 566 (*Bates I*); 163 Ill. App. 3d 893 (*Bates II*).) Therefore, we shall present only those facts helpful for understanding the issue before us. George and Mary Bates were married in 1976. Three years later the couple separated, and in 1980 Mr. Bates filed for divorce. Mrs. Bates filed a counterpetition seeking a legal separation. In 1984, the trial court granted the petition for legal separation and awarded Mrs. Bates separate maintenance. Prior to this order, Mr. Bates had been making temporary support payments. An appeal was filed, and the appellate court, in *Bates I*, reversed the circuit court, holding that a no-fault dissolution should be granted to Mr. Bates and directing the trial court to enter an immediate order of dissolution of marriage. The court also reversed the maintenance order and remanded

the cause for consideration of maintenance and attorney fees.

The trial court entered a bifurcated judgment of dissolution and reserved all remaining property issues for hearing. After this order was entered, however, Mrs. Bates filed a motion to vacate the dissolution order. Prior to a hearing on the motion, Mr. Bates died on December 28, 1986. The trial court then vacated its judgment of dissolution, concluding that the proceedings abated by reason of Mr. Bates' death. It also ordered the estate to pay $2,500 per month to Mrs. Bates. The executor of Mr. Bates' estate appealed these orders. The court in *Bates II* held the trial court had improperly vacated the judgment of dissolution. It then directed the trial court to immediately reinstate the bifurcated judgment of dissolution and to proceed to conduct a hearing on the financial issues.

On remand, the trial court reinstated the dissolution and held the hearings, as directed. The court ruled that the couple accumulated little marital property, and therefore no marital property award was granted. Mrs. Bates was awarded maintenance in gross, consisting of a residence valued at $400,000, $1.7 million in cash and a car. The estate objected to this award, contending that the obligation to pay future maintenance terminated upon the death of Mr. Bates. Also, the estate apparently did not receive credit, as previously allegedly assured by the trial judge, for the $60,000 provided in monthly payments after Mr. Bates' death. The estate filed a notice of appeal and at the same time asked the trial court to stay the maintenance-in-gross award pending appeal. The trial court granted a partial stay, which was conditioned upon the payment of $200,000 to Mrs. Bates within 14 days. The estate declined to accept the proposed partial stay and sought to stay the entire award in the appellate

court. The appellate court stayed the entire maintenance award on October 3, 1989.

After the stay was issued, Mrs. Bates applied to the trial court for equitable maintenance pursuant to section 504(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 504(c)). An evidentiary hearing was held on October 17, 1989, after which the trial court entered an order granting equitable maintenance in the form of a $12,000 payment due within seven days and $6,000 per month thereafter during the pendency of the appeal. The estate filed an amended notice of appeal to incorporate in its appeal the propriety of the equitable maintenance order and applied to the appellate court for a stay of this order pursuant to Supreme Court Rule 305(b) (107 Ill. 2d R. 305(b)). On October 25, 1989, the appellate court issued an order staying the trial court's equitable maintenance order and forbidding it to make any further maintenance awards during the pendency of the appeal.

Mrs. Bates filed in this court a petition for leave to appeal from the second order, which had stayed the equitable maintenance award. We granted this petition. In her brief, Mrs. Bates argues that the appellate court abused its discretion in granting the stay and that no stay should have been granted because the estate did not file a bond as required in Rule 305(b). After filing her brief, Mrs. Bates asked the appellate court to require the estate to post a bond. This motion was granted and the estate filed a bond in the amount of $1.7 million. In her reply brief and during oral argument before this court, Mrs. Bates waived any objections regarding the failure to provide a bond.

Mrs. Bates' first contention is that the stay was improperly granted because the estate should have applied first to the circuit court before going to the appellate court. Rule 305(b)(2) states that an "[a]pplication for a

stay ordinarily must be made in the first instance to the trial court. A motion for a stay may be made to the reviewing court, or to a judge thereof, but such a motion must show that application to the trial court is not practicable." (107 Ill. 2d R. 305(b)(2).) The estate's motion contended that application to the trial court would not be a practicable manner in which to proceed. Less than one month earlier the trial court had denied a complete stay of the maintenance-in-gross order. However, the appellate court then stayed the order. While the case was pending on appeal, Mrs. Bates petitioned and received an equitable maintenance order from the trial court, which also required the estate to make its first payment within seven days. Because the appellate court already had the case before it and had issued a stay on a similar maintenance issue, the estate believed that the most expeditious manner would be to proceed in that forum. The estate also contends that it may have been difficult to get a hearing on the stay before the trial court within the seven days that it had to make the first payment. Moreover, it argues that it was reasonable to assume that the trial court would deny the request in light of its prior rulings and statements made on the record regarding the judge's belief that Mrs. Bates is entitled to some form of maintenance even in light of the death of Mr. Bates.

We find that the appellate court did not abuse its discretion in entertaining the application for the stay. Rule 305(b) establishes the requirement that the parties should, in general, first proceed in the trial court when seeking a stay; however, this is not a mandatory requirement. In this instance there was an appeal before the appellate court, it had issued one stay on a similar issue, and considering what had already occurred in the proceedings it was likely that the trial court would deny the motion for a stay. The allegations of the estate's applica-

tion for a stay, filed in the appellate court, show adequate reasons for not filing the application for a stay in the trial court.

The main issue before us is under what guidelines the appellate court should act when deciding whether or not to grant a stay pursuant to Rule 305(b) (107 Ill. 2d R. 305(b)). A stay issued by the appellate court, formally referred to as a *supersedeas*, suspends enforcement of a judgment, and is intended to preserve the status quo pending the appeal and to preserve the fruits of a meritorious appeal where they might otherwise be lost. (*Gumberts v. East Oak Street Hotel Co.* (1949), 404 Ill. 386, 389-90; *People ex rel. Finn v. David* (1927), 328 Ill. 230, 234; 4 Am. Jur. 2d *Appeal & Error* §§364, 366 (1962); 4A C.J.S. *Appeal & Error* §662 (1957).) Courts have inherent power to grant a stay pending appeal, and whether or not to do so is a discretionary act. *Horvath v. Loesch* (1980), 87 Ill. App. 3d 615, 620; 4A C.J.S. *Appeal & Error* §§634, 635 (1957); 4 Am. Jur. 2d *Appeal & Error* §366 (1962).

The parties agree that the appellate court has discretion to grant a stay. They also agree that in reviewing a discretionary act the lower court will be reversed only if evidence establishes that there has been an abuse of discretion. They disagree on whether there has been an abuse of discretion in this case and on the appropriate guidelines to follow when granting a stay. Mrs. Bates argues that the standard to apply when determining whether to grant a stay is the same as that used in granting an injunction. Therefore, the movant must establish that (1) it has a right entitled to equitable protection, (2) failure to grant the stay will result in irreparable harm, (3) no adequate remedy at law exists, and (4) there is a likelihood of success on the merits. Mrs. Bates contends the estate is wealthy and will not suffer irreparable harm, and that if the equitable maintenance is re-

versed the estate can sue for the money paid out; therefore, it has an adequate remedy at law.

The consequences of granting an injunction and a stay are similar. However, we do not believe that it necessarily follows that the appropriate standard to rely on in issuing a stay is the same as an injunction standard, and none of the cases cited to by Mrs. Bates involved a Rule 305(b) stay or relied exclusively on the injunction standard. (See *Clark v. Country Mutual Insurance Co.* (1985), 131 Ill. App. 3d 633; *Allied Contracting Co. v. Bennett* (1982), 110 Ill. App. 3d 310; *Cahokia Sportservice, Inc. v. Illinois Liquor Control Comm'n* (1975), 32 Ill. App. 3d 801.) One problem with applying this standard is that a movant seeking to stay a money judgment order will have difficulty establishing that there will be no adequate remedy at law or irreparable damage will occur if the stay is not granted. The respondent can always allege that the amount of damages the movant suffers is clearly ascertainable and that the movant can sue to recover the money if successful on appeal. This is, in part, the argument made by Mrs. Bates for why in this case the stay should not be granted. (See *Hutter v. Lake View Trust & Savings Bank* (1977), 54 Ill. App. 3d 653 (no irreparable injury when loss can be fully compensated by damages which can be computed with reasonable certainty); *Cross Wood Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282.) She also argues that the fact that the respondent may not be able to repay the money is not irreparable injury; rather, it is a risk inherent in all litigation. We do not agree with Mrs. Bates' interpretation of the requirements necessary for a Rule 305(b) stay. The rule expressly applies to money judgments. Rule 305(a) automatically grants a stay of enforcement of judgments for money if the procedures are followed, and Rule 305(b) allows a discretionary stay from enforcement of judgments for money. (107 Ill. 2d Rules 305(a),

(b).) A movant seeking a stay from a money judgment under Rule 305(a) does not face the irreparable-injury hurdle, and should not under the discretionary stay under Rule 305(b), which would result from utilizing a ritualistic injunction standard, as argued by Mrs. Bates. Moreover, this standard does not adequately account for the numerous other factors which may be relevant to the appellate court in the exercise of its discretion; although, as noted below, certain of the injunction factors may be applicable when making the decision.

The estate cites the early case of *Lowry v. Bryant* (1839), 3 Ill. 2, and contends that in order to obtain a stay in the appellate court there must be "probable cause" for reversing the judgment of the trial court. It then contends that there is probable cause for reversal because the law in Illinois is clear that any obligation to pay maintenance terminates on the death of one of the parties. Therefore, the estate argues, the appellate court did not abuse its discretion.

The text of the opinion in *Lowry* states:

> "A *supersedeas* will be granted, when it appears, upon inspection of the record, that there is probable cause for reversing the judgment of the Court below. The *supersedeas* is allowed for the purpose of enabling the parties to litigate the question without prejudice to their rights, when there is probable grounds for suspending the enforcement of the execution." (3 Ill. at 2.)

We decline to follow exclusively the standard in *Lowry*. First, since 1839 probable cause has taken on a connotation relating to criminal law. Second, this is too restrictive a standard. Nevertheless, this is one important factor which the court should consider, though likelihood of success on the merits should not be the sole factor reviewed.

We conclude that it is not desirable to adopt a specific set of factors which the appellate court, in each instance,

must review when making its determination. (But *cf.* *Ruiz v. Estelle* (5th Cir. 1981), 650 F.2d 555, 565 (four factors to consider when determining whether the party has made a sufficient showing for the court to grant a stay).) Rather, we believe that the court should have a wide degree of latitude when exercising its discretion. There are numerous different factors which may be relevant when the court makes its determination and, by necessity, these factors will vary depending on the facts of the case. 4A C.J.S *Appeal & Error* §636 (1957) (recognizing numerous different grounds which may be relied upon for granting a stay and that, in general, a stay "will be allowed or refused on the particular grounds best fitting the exigencies of the individual case, and with a view to doing justice between the parties"); 4 Am. Jur. 2d *Appeal & Error* §367 (1962) ("the court will consider a variety of relevant factors").

One factor relevant in this case is whether a stay is necessary to secure the fruits of the appeal in the event the movant is successful. The record is not entirely clear on the financial condition of the parties. Mrs. Bates has received, since the initiation of this dissolution action, over $600,000, the use of a home which the estate is apparently paying the taxes on, and an automobile. She also has invested in a tax shelter and has made a down payment on her son's house. The estate has significant assets available to it; however, it contends that if the trial court is reversed it is unlikely that Mrs. Bates will be able to reimburse the monies paid out. From the record provided us it does appear that Mrs. Bates has a number of outstanding debts and that the trial judge was concerned that bills were not being paid. It was, therefore, reasonable for the appellate court to conclude that the *res* of the appeal may be in jeopardy and that it may be appropriate to maintain the status quo which existed prior to the time the order was entered.

The most persuasive factor in this case, and one to which other courts often look (see *Flower Cab Co. v. Petitte* (7th Cir. 1982), 685 F.2d 192; 4A C.J.S. *Appeal & Error* §637(c) (1957)), is the movant's likelihood of success on the merits, which is also a component in the injunction analysis. After Mr. Bates died, the trial court granted maintenance, in light of the criteria set forth in section 504 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 504). After that order was stayed, the trial court entered an order of equitable maintenance pursuant to section 504(c), which gives discretionary authority to award maintenance pending appeal. (Ill. Rev. Stat. 1987, ch. 40, par. 504(c).) The estate, however, objected and argued that section 510(c) of the Act prohibits any award of post-death maintenance. (Ill. Rev. Stat. 1987, ch. 40, par. 510(c).) Whether the award of either maintenance order is appropriate is the basis of the case now pending in the appellate court. The issue has not been fully briefed before us and we will not decide that issue in this opinion. Nevertheless, the law does appear persuasive for the stance that no awards are authorized after death of a party. If the law does appear clear, upon a preliminary examination, there is sufficient basis for a court to decide whether or not to grant the stay.

In *Cross v. Cross* (1955), 5 Ill. 2d 456, 462, this court stated that alimony does not accrue after the death of either party and that such payment terminates with the death of the husband, in the absence of a special provision in the decree evidencing an intention to bind the estate to continue such payments. (See also *In re Marriage of Garlinski* (1981), 99 Ill. App. 3d 107, 110 (maintenance may be barred by the death of a party).) This holding is consistent with section 510(c) of the Act, which states that "[u]nless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court, the obligation to pay

future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance." (Ill. Rev. Stat. 1987, ch. 40, par. 510(c).) Mrs. Bates contends that section 510(c) does not preclude the court from approving a maintenance award after the death of one party and cites *In re Marriage of Freeman* (1985), 106 Ill. 2d 290. However, the order of maintenance in *Freeman* was entered prior to the death of a party and was specifically intended to allow for payments to continue after the remarriage of Mrs. Freeman. Therefore, it is consistent with section 510(c), which allows the judge, while the parties are alive, to enter a decree allowing maintenance to continue after death or remarriage. *Freeman* cannot be read to hold that a judge may award post-death maintenance after one party dies. Mrs. Bates also argues that our legislature has enacted laws to ensure that one party is not placed in a difficult financial position during an appeal and therefore she is entitled to the payments. (See Ill. Rev. Stat. 1987, ch. 40, pars. 413(a), 504(c).) These provisions do not create a substantive right to the maintenance pending appeal. (See *Sherman v. Sherman* (1979), 74 Ill. App. 3d 451, 454.) They apply when a right to maintenance already exists and, therefore, must be read in conjunction with the prohibition of section 510(c). In this case there was no such clear right. Although we do not resolve the legal issues concerning the post-death maintenance award, considering the state of the law on the issue pending before the appellate court, it was reasonable to conclude that the estate is likely to succeed on the merits.

A final factor relevant to the decision in this case is the likelihood that the respondent will suffer hardship, although this is not the controlling factor and it should be considered in light of the other factors. (See *City of Chicago v. Cosmopolitan National Bank* (1979), 77 Ill.

App. 3d 212, 220; *Ruiz v. Estelle* (5th Cir. 1981), 650 F.2d 555, 565; 4A C.J.S. *Appeal & Error* §636 (1957) (a balancing of convenience is not the controlling factor, although the respective rights of the litigants should be considered).) Mrs. Bates argues, in her brief, that the balance of convenience weighs heavily in her favor and that she will be "destitute" if the payments stop. As stated, the record is not clear on Mrs. Bates' financial condition, though there is evidence that bills are not being paid timely. However, the estate has made substantial payments throughout this litigation and Mrs. Bates has been able to invest money in different ventures. Although this factor may weigh in her favor, in light of the totality of the considerations, we conclude that there was no abuse of discretion for the appellate court to issue a stay of the judgment of the trial court in this instance.

We must keep in mind that we have before us only the narrow issue of whether or not the appellate court abused its discretion in staying the effect of the trial court's order granting equitable maintenance pending appeal. The question of whether the trial court properly granted maintenance in gross (which the appellate court previously stayed) and the question of whether the trial court properly granted equitable maintenance (which the appellate court stayed, which stay is the subject of this appeal) are still pending in the appellate court and are not directly involved in this appeal.

Summarizing our holding, we decline to follow a ritualistic formula which specifies the elements a court may consider in passing on a motion to stay, and which limits the court's consideration to those elements. In making the determination whether or not to grant a stay pending appeal, the court, of necessity, is engaged in a balancing process as to the rights of the parties, in which all elements bearing on the equitable nature of the relief

sought should be considered. The various elements we have discussed herein are among those proper to consider. We noted above that *Ruiz v. Estelle* (5th Cir. 1981), 650 F.2d 555, 565, listed four factors that must be considered under the Federal rule. Although this limitation is contrary to our approach, we do agree with the balancing analysis of that case. The granting of a stay pending appeal is preventive or protective and seeks to maintain the status quo pending appeal. We believe that in all cases, the movant, although not required to show a probability of success on the merits, must, nonetheless, present a substantial case on the merits and show that the balance of the equitable factors weighs in favor of granting the stay. If the balance of the equitable factors does not strongly favor movant, then there must be a more substantial showing of a likelihood of success on the merits. Thus a strong showing of the likelihood of success on the merits may offset other equitable factors favoring the other party.

We do not know what the briefs and arguments, or indeed the record, will disclose on appeal as to the merits of the questions now pending in the appellate court. We, therefore, make no judgment as to those matters. We do find, however, that in the matter now before this court, the estate has made a strong showing of the probability of success on the merits. Balancing this with the other equitable factors considered in this case, we find, as indicated above, that the appellate court did not abuse its discretion in ordering a stay of the equitable maintenance order of the trial court.

For the above stated reasons, the order of the appellate court issuing the stay is affirmed and the cause is remanded to the appellate court for consideration of the remaining issues.

*Appellate court affirmed;*
*cause remanded.*