2019 IL App (2d) 181019
No. 2-18-1019
Opinion filed September 30, 2019

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JOSEPH J. TIRIO, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18-MR-302 |
| | ) | |
| JANICE DALTON and BREAKER | ) | |
| PRESS CO., INC., | ) | |
| | ) | |
| Respondents-Appellants | ) | |
| | ) | Honorable |
| (The Illinois Integrity Fund, | ) | Kevin G. Costello, |
| Intervenor-Appellant). | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hudson and Hutchinson concurred in the judgment and opinion.
Justice Hutchinson also specially concurred, with opinion.

**OPINION**

¶ 1     The petitioner, Joseph J. Tirio, filed a petition for presuit discovery pursuant to Illinois

Supreme Court Rule 224 (eff. May 30, 2008) against the respondents, Janice Dalton and Breaker

Press Co., Inc. (Breaker).  He sought to discover the identities of certain persons (the unknown

defendants) who, as members of the intervenor, the Illinois Integrity Fund (Integrity Fund),

created and published three allegedly defamatory campaign flyers.  The flyers were mailed with

the Integrity Fund's return address.  Dalton, Breaker, and the Integrity Fund appeal from the

order of the circuit court of McHenry County granting Tirio's Rule 224 petition. For the reasons discussed herein, we affirm.

¶ 2                                     I. BACKGROUND

¶ 3      On December 1, 2016, Tirio was sworn in as McHenry County Recorder. In 2018, while maintaining his recorder position, Tirio ran as a candidate in the Republican primary for the position of McHenry County Clerk. Dalton ran in the same Republican primary for the same position. Leading up to the 2018 primary election, the Integrity Fund published in McHenry County three flyers in opposition to Tirio's candidacy. The Integrity Fund paid Breaker to print the flyers. On the front of the first flyer, Tirio was depicted wearing a burglar mask and gloves. The flyer stated that "Crooked Joe Tirio" had a "secret taxpayer funded slush fund" and that he was "just another crooked politician." On the back of the flyer, it stated, in part, that Tirio hired four employees and paid for a vacation to New Mexico with funds from the "slush fund."

¶ 4      On the front of the second flyer, Tirio was again depicted wearing a burglar mask and gloves. It stated that "crooked Joe Tirio" and "his Chicago style politics" were "destroying the GOP with Chicago style sleaze." Using arrows as bullet points, the flyer listed "Slush fund," "Taxpayer-funded vacations," and "Moneyman for the racist campaigns of Brettman & Schuster." On the back of the flyer, it stated that "we know about" his "secret slush fund," "patronage hires," and "taxpayer-funded vacations." It also stated that "Joe Tirio is running for County Clerk to oversee our elections. Tirio is the moneyman behind the campaign of RACISM & HATE."

¶ 5      On the front of the third flyer, it stated that Tirio and his friends were wrong for McHenry County. On the back, it stated that Tirio and his friends were "David Duke Republicans" with extremist views. It also again referenced a secret slush fund, patronage hires, and taxpayer-

funded vacations. It further stated "Make McHenry County Great Again" and "Vote No on Joe Tirio." In 2018, Dalton produced and published a "robo call" to numerous households in McHenry County, using language nearly identical to some of the language used in the flyers.

¶ 6 On May 22, 2018, after winning the Republican primary for McHenry County Clerk, Tirio filed a first amended petition pursuant to Rule 224 against Dalton and Breaker for the purpose of learning the identities of the unknown defendants. Tirio's petition incorporated by reference a proposed complaint against the unknown defendants. The complaint alleged that the masked image, "crooked" statement, "slush fund" statement, "hiring" statement, and "vacation statement" contained in the three flyers were defamatory *per se*.

¶ 7 On June 29, 2018, Dalton and Breaker filed a combined objection and motion to dismiss the Rule 224 petition. They argued that the petition should be dismissed pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)) and that they could not be forced to respond to discovery or disclose the unknown defendants, because the statements were not defamatory *per se*, the slush-fund and hiring statements were capable of an innocent construction, all the statements were protected political opinions, the statements were substantially true, and Tirio failed to allege facts sufficient to plead actual malice.

¶ 8 On August 23, 2018, following a hearing, the trial court found that the term "crooked" and the masked image were statements of political opinion and thus not actionable. But the trial court found that the references to a slush fund and a secret slush fund were statements of alleged fact that were arguably defamatory. The trial court found that, viewing the flyers as a whole, the references to a slush fund could not be innocently construed and could be viewed as defamatory *per se* for alleging both the commission of a crime and a lack of integrity in carrying out a public office. The trial court also found that it could not determine at that stage in the proceedings that

the statements were substantially true. Thus, the allegations were sufficient to withstand a section 2-615 dismissal. Finally, the trial court found that Tirio had not sufficiently pleaded actual malice, specifically, allegations as to the falsity or knowing falsity of the statements in the flyers. The trial court granted the motion to dismiss as to Tirio's failure to plead actual malice, but it denied the motion as to all other matters.

¶ 9 On August 31, 2018, Tirio filed a second amended Rule 224 petition. Tirio had added allegations to his proposed complaint in an attempt to properly plead actual malice. In his complaint, Tirio alleged that the budget from the recorder's office was generated entirely from user fees collected in conducting its services, and not from any county taxpayer funds. The user fees were deposited into one of four accounts. Those four accounts were open to the public for inspection and included the County General Fund, the Recorder's Automation Fund (the ROA Fund), the Geographical Information Services Fund, and the Illinois State Regional Housing Support Program Fund. An accountant oversaw the four accounts, and the treasurer regularly audited the accounts. There had never been a secret fund, and there was no taxpayer-funded account maintained by Tirio or the recorder's office. The recorder's office filed a monthly revenue report that was a public record. The county budget and the treasurer's report were also matters of public record. The monthly treasurer's report included account balances, including the balance of the ROA Fund.

¶ 10 The complaint further alleged that, between the date he took office and March 2018, Tirio hired four individuals. The positions were publicly advertised. A hiring committee from the recorder's office interviewed and hired the four individuals. Tirio did not know three of the four hires, and the fourth he had spoken with only briefly, following a lecture Tirio gave on real estate law. The four individuals were not Tirio's friends.

¶ 11 Tirio acknowledged in his complaint that he attended a Property Records Industry Association Conference in Albuquerque, New Mexico, for four days at the end of February 2017. He submitted meal vouchers for the trip, totaling about $50. He flew by commercial airline and booked a hotel about a block away from the conference, because it had lower room rates. He was not joined by any friends or family while he was at the conference and he did not take any personal excursions. The subject matter of the conference related to automation tasks being undertaken by the recorder's office. Tirio alleged that the unknown defendants must have known the purpose of the trip but chose to claim as fact in the flyers that "Crooked Joe paid for his vacation in New Mexico with the slush fund."

¶ 12 The complaint further alleged that the three flyers (attached as exhibits to the complaint) were mailed in February and March 2018 to hundreds of households in McHenry County. The complaint set forth three counts, with each count based on one of the three flyers. Tirio alleged that the statements in the flyers were individually and collectively defamatory *per se*, that the defamatory character of the statements was apparent on their face, that the statements were obviously and materially harmful to him, and that injury to his reputation could be presumed. Tirio alleged that the statements imputed the commission of a crime, an inability to perform or a want of integrity in the discharge of his duties of office, and a lack of ability in his profession. Further, the statements were not true, were not reasonably capable of an innocent construction, and were not privileged.

¶ 13 Finally, Tirio alleged that the flyers were published with actual malice, as the unknown defendants were aware that the recorder's office's funds were a matter of public record. Tirio alleged that the unknown defendants knew that (1) Tirio had a good reputation; (2) the accounts managed by the recorder's office were not "secret" but were a matter of public record; (3) the

public records showed that the accounts were funded by user fees, not county taxes; (4) the public records showed that the accounts were not a "slush fund" for bribing public officials or carrying on corruptive propaganda or an unregulated fund used for illicit purposes; and (5) the unknown defendants knew that Tirio's trip to New Mexico was not for a vacation. Despite the foregoing knowledge, the unknown defendants made statements that accused Tirio of dishonorable and criminal conduct, theft of public funds, and official misconduct. Tirio thus alleged that the unknown defendants either knew that the statements were false or made the statements with reckless disregard as to the truth.

¶ 14    On September 28, 2018, Dalton and Breaker filed a combined objection to the petition and a section 2-615 motion to dismiss the complaint, arguing that Tirio had still not properly pled actual malice. On October 26, 2018, following a hearing, the trial court found that, regarding the slush-fund and vacation statements, Tirio had adequately pleaded that matters of public record could establish that those statements were not true and thus were made with actual malice.

¶ 15    On November 29, 2018, the trial court denied Dalton and Breaker's motion to reconsider and granted Tirio's Rule 224 petition. The trial court found that the "statements in the flyers that [Tirio] kept a secret slush fund and used taxpayer money to go on a vacation" clearly implied the crime of theft. Additionally, the trial court stated that "using the secret taxpayer-funded slush fund to go on vacation would [impute] a lack of integrity." The trial court stated that whether Tirio was "keeping a secret slush fund and using it to pay for a vacation" was something that could be verified. The trial court ordered Dalton and Breaker to answer limited discovery, namely, to identify the unknown defendants.

¶ 16    Dalton and Breaker filed a timely notice of appeal from this order and moved to stay enforcement of the order.  The trial court denied the stay and ordered compliance by December 13, 2018.  On that date, Dalton and Breaker declined to comply with the order for the sole purpose of preserving the status quo pending appeal.

¶ 17    On December 17, 2018, the trial court issued a rule to show cause why Dalton and Breaker should not be held in contempt for failing to comply with the disclosure order.  The trial court granted the Integrity Fund's petition to intervene for the purpose of joining in Dalton and Breaker's response to the rule to show cause.  The Integrity Fund authorized its counsel of record, Natalie Harris, to accept service on its behalf to allow Tirio to file and serve his complaint against it before the expiration of the one-year limitations period and to eliminate any risk of harm from a friendly contempt order.  Over the objection of Dalton and Breaker and the Integrity Fund, the trial court refused to enter a friendly contempt order or impose nominal sanctions for the purpose of maintaining the status quo pending their appeal.  The trial court held Breaker in indirect civil contempt and ordered its president incarcerated pending compliance with the disclosure order.

¶ 18    On December 21, 2018, at a hearing, Breaker's president divulged the names of the unknown defendants and the contempt order was vacated.  The rule to show cause was dismissed as to Dalton, because she testified that she had never heard of the Integrity Fund or spoken with anyone associated with it.  On January 18, 2019, Dalton and Breaker and the Integrity Fund filed an amended notice of appeal.

¶ 19                                II. ANALYSIS

¶ 20    On appeal, Dalton and Breaker and the Integrity Fund (hereinafter the appellants) argue that the trial court erred in granting Tirio's Rule 224 petition.  Specifically, the appellants

contend that the petition should have been denied because Tirio's defamation complaint was not sufficient to withstand a section 2-615 motion to dismiss. The appellants argue that the slush-fund and vacation statements are protected from defamation liability and that Tirio failed to sufficiently allege actual malice. Additionally, the appellants argue that the trial court erred in denying their motion to stay the disclosure order pending this appeal and in denying their request for a friendly contempt finding.

¶ 21 At the outset, we must review whether this case is moot, even if neither party raises the issue, because mootness is a question of jurisdiction. *Patel v. Illinois State Medical Society*, 298 Ill. App. 3d 356, 364 (1998). "The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 149 (2004). "An appeal is moot when it involves no actual controversy or the reviewing court cannot grant the complaining party effectual relief." *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 523 (2001).

¶ 22 The present case is arguably moot because Tirio has already learned the names of the unknown defendants and filed suit in McHenry County against those defendants. However, there are three recognized exceptions to the mootness doctrine: (1) the public-interest exception, (2) the collateral-consequences exception, and (3) the capable-of-repetition exception. *In re Alfred H.H.*, 233 Ill. 2d 345, 355-63 (2009). The first of these applies here.

¶ 23 The public-interest exception allows for review of an otherwise moot issue when the magnitude of the interests involved warrants action by the court. *In re Shelby R.*, 2013 IL 114994, ¶ 16. The public-interest exception applies when (1) the question presented is of a public nature, (2) there is a need for an authoritative determination for the future guidance of

public officers, and (3) the question is likely to recur. *Alfred H.H.*, 233 Ill. 2d at 355. The exception is narrowly construed and requires a clear showing of each criterion. *Id.*

¶ 24    In the present case, several factors demonstrate that the public-interest exception to the mootness doctrine applies. The first amendment's protection of anonymous speech, in this case both public and in the context of a political campaign, is a matter of public concern. Further, the circumstances are likely to recur in future political campaigns, as malicious and possibly false accusations are now all too common in our country's political discourse. For this reason, authoritative guidance from this court is needed. Accordingly, we will address the merits of this appeal.

¶ 25                    A. Propriety of Granting the Rule 224 Petition

¶ 26    Illinois Supreme Court Rule 224(a)(1)(i) (eff. May 30, 2008) provides that a person or entity who wishes to engage in presuit discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages can file an "independent action" for such discovery. The action for discovery shall be initiated by the filing of a verified petition in the circuit court and shall name as respondents the persons or entities from whom discovery is sought. Ill. S. Ct. R. 224(a)(1)(ii) (eff. May 30, 2008). The petition must set forth the reason the proposed discovery is necessary and limit discovery to the identification of the responsible persons and entities. *Id.* Generally, the appellate court reviews a trial court's ruling on a Rule 224 petition for an abuse of discretion. *Maxon v. Ottawa Publishing Co.*, 402 Ill. App. 3d 704, 709 (2010).

¶ 27    In a defamation case, in order to show the necessity of the identification, the petitioner must demonstrate that a potential defamation claim against the unidentified individual or entity would survive a section 2-615 motion to dismiss. *Doe v. Catholic Diocese of Rockford*, 2015 IL App (2d) 140618, ¶ 17; *Maxon*, 402 Ill. App. 3d at 712. A section 2-615 motion to dismiss

challenges the legal sufficiency of a complaint, based on facial defects of the complaint. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 382 (2004). The critical inquiry is whether the allegations of the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action on which relief may be granted. *Hadley v. Subscriber Doe*, 2015 IL 118000, ¶ 29. A trial court should grant a section 2-615 motion to dismiss only if "it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). A court must accept as true "all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Id.* This court reviews *de novo* a trial court's ruling on a motion to dismiss. *Hadley*, 2015 IL 118000, ¶ 29.

¶ 28    In order to state a defamation claim, a plaintiff must plead facts demonstrating that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of the statement to a third party, and that the publication caused damages to the plaintiff. *Stone v. Paddock Publications, Inc.*, 2011 IL App (1st) 093386, ¶ 24. A statement is defamatory if it harms an individual's reputation by lowering the individual in the eyes of the community or if it deters the community from associating with the individual. *Id.* Statements can be considered defamatory *per se* or defamatory *per quod*. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10 (1992). A statement is defamatory *per se* if its defamatory character is obvious and apparent on its face and injury to the plaintiff's reputation can be presumed. *Owen v. Carr*, 113 Ill. 2d 273, 277 (1986). In a defamation *per quod* action, damage to the plaintiff's reputation is not presumed. Rather, the plaintiff must plead and prove special damages to recover. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 103 (1996). In the present case, Tirio alleges only a claim of defamation *per se*.

¶ 29    Illinois recognizes five categories of statements that are defamatory *per se*: (1) words imputing the commission of a criminal offense, (2) words imputing an infection with a loathsome communicable disease, (3) words imputing an individual's inability to perform his employment duties or a lack of integrity in performing those duties, (4) words imputing a lack of ability in an individual's profession or prejudicing an individual in his or her profession, and (5) words imputing an individual's engagement in fornication or adultery. *Stone*, 2011 IL App (1st) 093386, ¶ 25.  Because a claim of defamation *per se* relieves a plaintiff of the obligation to prove actual damages, it must be pleaded with a heightened level of precision and particularity. *Id.*  In this case, Tirio alleges defamation *per se* based on the first, third, and fourth categories.  With these principles in mind, we turn to the appellants' contentions.

¶ 30                              1. Defamation *Per Se*

¶ 31    The appellants first argue that Tirio failed to adequately plead that the slush-fund and vacation statements were defamatory *per se*.  The appellants argue that the complaint fails to allege facts that impute the commission of a specific crime or that demonstrate a lack of integrity or want of ability in Tirio's profession.

¶ 32    Like the trial court, we agree that the statements in the flyers impute the commission of the crime of theft.  While allegedly defamatory words need not meet the pleading requirements of an indictment, the words must fairly impute the commission of a crime. *Catholic Diocese of Rockford*, 2015 IL App (2d) 140618, ¶ 46.  The flyers state that Tirio had a secret taxpayer-funded slush fund and that he used those funds to pay for a personal vacation.  Thus, a reasonable reader could infer that Tirio intentionally, and without authorization, used taxpayer funds for personal use.  Such actions would fall within the crime of theft. *People v. McCarty*, 94

Ill. 2d 28, 33 (1983) (theft is an unauthorized taking with the intent to permanently deprive the owner of the use or benefit of the property).

¶ 33    Further, the statements impute to Tirio a lack of integrity in performing his duties and prejudice Tirio in his profession.  Having a secret taxpayer-funded slush fund and using the funds to pay for a personal vacation, implying a misuse of government funds, would demonstrate a lack of integrity in Tirio performing his duties as the McHenry County Recorder.  Further, the statements could prejudice Tirio in his profession because misconduct in his duties as the recorder would undermine his constituents' trust in him.  Accordingly, we conclude that Tirio's complaint adequately set forth claims of defamation *per se*.

¶ 34                                          2. Innocent Construction

¶ 35    The appellants next argue that the statements in the flyers are reasonably capable of an innocent construction.  Even if a statement falls into one of the recognized categories of defamation *per se*, it will not be found actionable *per se* if it is reasonably capable of an innocent construction.  *Hadley*, 2015 IL 118000, ¶ 31.  The innocent-construction rule requires courts to consider statements in context, giving the words, and their implications, their natural and obvious meaning.  *Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982).  "Courts must therefore interpret the allegedly defamatory words as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader."  *Bryson*, 174 Ill. 2d at 93.  When a defamatory meaning was clearly intended to be conveyed, courts will not strain to interpret allegedly defamatory statements in an inoffensive manner.  *Id.*  "[T]he innocent construction rule does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable."  *Tuite v. Corbitt*, 224 Ill. 2d 490, 504-05 (2006).  Courts are not required "to espouse a naïveté unwarranted under the circumstances."  *Bryson*,

174 Ill. 2d at 94. Whether a statement is reasonably susceptible to an innocent interpretation is a question of law for the court to decide. *Chapski*, 92 Ill. 2d at 352. Whether the statement was in fact understood to be defamatory is a question for the jury, if the initial determination is resolved in the plaintiff's favor. *Id.*

¶ 36 The appellants argue that a reasonable interpretation of "slush fund" is that it is "an unregulated fund." The appellants contend that the use of an unregulated fund does not necessarily impute the commission of a crime or a lack of integrity. They further contend that under *Mittelman v. Witous*, 135 Ill. 2d 220, 232 (1989), we must adopt the reasonable nondefamatory meaning of the slush fund statement.

¶ 37 The Merriam-Webster Online Dictionary defines "slush fund" as follows: "a fund for bribing public officials or carrying on corruptive propaganda" and, alternatively, "an unregulated fund often used for illicit purposes." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/slush%20fund (last visited Sept. 19, 2019) [https://perma.CC/A8TZ-JEKM]. The appellants contend that we should adopt the latter definition and cut it short to just "an unregulated fund." However, we are required to interpret the allegedy defamatory words in context, "according to the idea they were intended to convey to the reasonable reader." *Bryson*, 174 Ill. 2d at 93. Along with the allegedly defamatory statements, Tirio was depicted wearing gloves and a mask and was referred to as "Crooked Joe." The idea intended to be conveyed was that Tirio had an unregulated fund that he used for illicit purposes, such as hiring cronies and taking personal vacations. This is what a reasonable reader would infer from the statements on the flyers. It is not reasonable to believe that the unknown defendants intended to convey that Tirio was merely in charge of an unregulated fund. To interpret it this way would be to "espouse a naïveté unwarranted under the circumstances." *Id.* at 94.

¶ 38    The appellants argue that, under *Mittelman*, we must adopt the nondefamatory meaning of the slush-fund statement, *i.e.*, that it refers to only an unregulated fund. In that case, the plaintiff argued that a complaint for defamation could be dismissed only if the court found that an innocent construction was "equally or more reasonable" than a defamatory construction. *Mittelman*, 135 Ill. 2d at 232. The court rejected the plaintiff's "balancing of reasonable constructions" approach and held that "a statement 'reasonably' capable of a nondefamatory interpretation, *** should be so interpreted." *Id.* Our determination does not conflict with *Mittelman*, because we have determined that the interpretation suggested by the appellants here, that the statements at issue referred to merely an unregulated fund, was not a reasonable interpretation within the context of the flyers.

¶ 39    The appellants also cite *Hodges v. Oklahoma Journal Publishing Co.*, 617 P.2d 191 (Okla. 1980), in arguing that the term "slush fund" was not defamatory. At issue in that case was a newspaper article written by a reporter for the defendant about the plaintiff. *Id.* at 192. The title of the article was "AUDIT TURNS UP TAG SLUSH FUND." *Id.* This was followed by a tagline reading " 'Report accuses Hodges' " and a story addressing an audit being conducted by the state examiner and inspector. *Id.* The plaintiff argued that the reference to a "slush fund" was defamatory as it was not supported by the story, which thus provided an inference that the defendant acted with actual malice. *Id.* at 194. The defendant argued that the headline did not conflict with the story and that the whole article had to be considered. *Id.*

¶ 40    The court held that the term "slush fund" in the title of the article was ambiguous as to its defamatory content and that, therefore, it had to be read within the context of the article as a whole. *Id.* at 195. The context of the article did not support an inference that the defendant intended a defamatory meaning or acted with actual malice. The court thus affirmed summary

judgment in favor of the defendant. *Id.* at 196. In the present case, *Hodges* does not require us to reach a different result. As in *Hodges*, we must view the term "slush fund" within the context of the flyers as a whole. In that context, the statements at issue in this case were not reasonably susceptible to an innocent interpretation.

¶ 41                                3. Protected Opinion

¶ 42    The appellants also argue that the trial court should have denied the Rule 224 petition, because the slush-fund and vacation statements are protected speech under the first amendment, as they expressed only opinion. Even if a statement is defamatory *per se*, it is not actionable if it is an expression of opinion, protected under the first amendment. U.S. Const., amend. I; *Owen*, 113 Ill. 2d at 280. "[T]he first amendment prohibits defamation actions based on loose, figurative language that no reasonable person would believe presented facts." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 397-98 (2008). To determine whether an allegedly defamatory statement is protected under the first amendment, or whether it can be reasonably interpreted as stating actual facts, the emphasis is on whether it contains an objectively verifiable assertion. *Schivarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 760 (2002). Whether a statement is of an opinion or a fact is a question of law. *Moriarty v. Greene*, 315 Ill. App. 3d 225, 234 (2000).

¶ 43    As explained by our supreme court:

"[T]here is no artificial distinction between opinion and fact: a false assertion of fact can be defamatory even when couched within apparent opinion or rhetorical hyperbole. [Citations.] Indeed, '[i]t is well established that statements made in the form of insinuation, allusion, irony, or question, may be considered as defamatory as positive and direct assertions of fact.' [Citation.] Similarly, '[a] defendant cannot escape liability for

defamatory factual assertions simply by claiming that the statements were a form of ridicule, humor or sarcasm.' [Citation.] The test is restrictive: a defamatory statement is constitutionally protected only if it cannot be reasonably interpreted as stating actual fact. [Citation.]" *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 581 (2006).

In determining whether a statement is of an opinion, and thus not subject to a cause of action for defamation as a matter of law, courts consider the (1) precision of the statement, (2) verifiability of the statement, (3) literary context of the statement, and (4) public and social contexts of the statement. *Id.*

¶ 44 The appellants argue that the slush-fund statement is imprecise and not verifiable. They contend that "slush fund" could convey a number of different meanings, such as an unregulated fund, money kept for unexpected costs, money set aside as a reserve, or a rainy-day fund. On the one hand, they argue that the slush-fund statement reflected Tirio's political adversaries' opinion that the ROA Fund surplus had become excessive. On the other hand, they argue that the term is not verifiable because there is no way for someone to determine whether the ROA Fund was the "slush fund."

¶ 45 The appellants' argument does not make sense. It is contradictory to argue that the slush-fund statement was merely of an opinion that the ROA Fund surplus had become excessive and also argue that the slush-fund statement was not verifiable because no one could determine whether it referred to the ROA Fund. We affirm the trial court's finding that Tirio's allegations were sufficient to allege a defamation claim because the flyers could be reasonably interpreted as stating actual facts. The statement that Tirio had a secret slush fund indicates that he had an

actual account that was funded with taxpayer money that he used for improper purposes. This is a matter of fact that could be verified.

¶ 46 The appellants also argue that the vacation statement is imprecise and not verifiable. They assert that it is well known that business conferences are often a blend of substantive presentations, recreation, dining, and entertainment—with the balance leaning toward pleasure versus work. They contend that there is no way to verify whether the New Mexico business trip was also a vacation. They argue that the vacation statement was merely an objection to Tirio's "hypocritical practice of preaching small government while enjoying warm weather trips under the guise of professional development."

¶ 47 We hold that the vacation statement refers to a matter that could be verified. The flyers contain no reference to a New Mexico conference for professionals who are employed in recorders' offices. Therefore, the argument that the statement was merely referring to a business trip with no real professional value is not persuasive. The statement that Tirio took "taxpayer-funded vacations" could be reasonably interpreted as stating an actual fact: specifically, that he took a vacation that was paid for with taxpayer dollars. There is nothing in the flyers that would make a reader believe that the statement was simply referring to a legitimate business conference that had no professional value or included more pleasure than business.

¶ 48 The appellants further argue that the literary, public, and social context renders the slush-fund and vacation statements to be expressions of opinion. The appellants note that the flyers also include statements that Tirio "claims to be a straight shooter" and "claimed to believe in smaller government and lower taxes." The appellants argue that the overarching theme of the flyers was that Tirio's actions did not match his words and thus the statements at issue reflected "the *opinion* of political rivals gearing up for battle." (Emphasis in original.) The appellants

contend that in today's political climate it is common to refer to political opponents as crooks and criminals and bombard the media with sensational claims of schemes and fraud. As such, the appellants assert, a reasonable reader would construe the statements as a harsh critique of Tirio's use of the recorder's office funds.

¶ 49 We acknowledge that "[e]xaggerated rhetoric is commonplace in political campaigns." *Maag v. Illinois Coalition for Jobs, Growth & Prosperity*, 368 Ill. App. 3d 844, 851 (2006). However, in cases where such exaggerated rhetoric is determined not to be actionable, it is because there are no specific verifiable assertions of fact underlying those statements. See, *e.g.*, *Stone*, 2011 IL App (1st) 093386, ¶ 29 (finding statement nonactionable because, in context, it lacked a precise meaning that could be verified and it contained no factual content; further, while the statement referenced morally corrupt activity, it did not state that the plaintiff engaged in such activity and the circumstances indicated that the speaker would not know whether the plaintiff engaged in such activity); *Maag*, 368 Ill. App. 3d at 851 (finding statements not actionable in their broader context, because the statements were too vague to be verifiable); *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 520 (1998) (finding the statement that the plaintiff "was fired because of incompetence" to be nonactionable because readers could conclude that it was mere posturing before an ensuing legal battle between the parties and because there were no other factual assertions in support of the statement).

¶ 50 In this case, the statements in the flyers that Tirio was "crooked" and that he was "destroying the GOP with Chicago style sleaze" could be viewed as a political rival's opinion that Tirio was not a trustworthy candidate for the county clerk position. Such statements are nonspecific political hyperbole because there is no factual content. However, the statements that Tirio had a secret slush fund and had taken taxpayer-funded vacations are so specific that they go

beyond political hyperbole, as there is nothing in the context to suggest that they could not be reasonably interpreted as stating actual facts.

¶ 51                                    4. Substantial Truth

¶ 52    The appellants further contend that the slush-fund and vacation statements are not actionable because they are substantially true.  A defendant is not liable for a defamatory statement if the statement is true.  *J. Maki Construction Co. v. Chicago Regional Council of Carpenters*, 379 Ill. App. 3d 189, 203 (2008).  While "substantial truth" can be an affirmative defense to a defamation suit, falsity is also an element of the defamation plaintiff's cause of action.  *Kapotas v. Better Government Ass'n*, 2015 IL App (1st) 140534, ¶ 34.

¶ 53    Tirio's complaint sufficiently alleges that the statements at issue are false.  Tirio alleged that the recorder's office had only four accounts and that the activity on all four of those accounts was a matter of public record.  Thus, Tirio has sufficiently alleged that he could not have had a "secret slush fund."  Additionally, Tirio alleged that the purpose of his New Mexico trip was not for a vacation but for a business conference.  He further alleged that he did not have any friends or family with him and he did not take any personal excursions while at the business conference.  Thus, Tirio has sufficiently alleged that he did not take a taxpayer-funded vacation.

¶ 54    The appellants argue that the slush-fund statement is substantially true because the treasurer's report clearly demonstrates that the ROA Fund has continued to increase while Tirio has been in office and that he has free rein to use those funds as he pleases.  However, this argument is not an attack on the sufficiency of Tirio's allegations, which is what is at issue at this point in the proceedings.  Such argument is more appropriately raised as an affirmative defense.

¶ 55    The appellants also argue that the vacation statement is substantially true because Tirio admitted that he used public funds to travel to New Mexico.  They cite an Ohio case, *Lansky v.*

*Cairavino*, No. 90073, 2008 WL 2257753, at *2 (Ohio Ct. App. June 2, 2008), where the allegedly defamatory statement on a campaign brochure was that the plaintiff "frequently traveled at the city's expense." The *Lansky* court held that there was no evidence of actual malice because the statement was substantially true, as the plaintiff had admitted that he traveled at the city's expense. *Id.* at *6. However, *Lansky* is distinguishable because, in this case, Tirio did not admit that he took a "taxpayer funded vacation." Tirio admitted only that he traveled to New Mexico for a business conference. It is axiomatic that traveling for business purposes is not the same as taking a vacation.

¶ 56                                    5. Actual Malice

¶ 57    The appellants next argue that Tirio failed to allege a cause of action under section 2-615 because he failed to adequately allege actual malice. Specifically, the appellants contend that the public records do not disclose the surplus contained in the ROA Fund and thus anyone combing the records would not know whether a slush fund existed or whether the slush-fund statement was false. The appellants note that the ROA Fund balance appears in the treasurer's report but that it is difficult to find, supporting the inference that the recorder's office keeps the existence of the ROA Fund and its surplus hidden from the public. Further, the appellants contend that the public records do not disclose expenditures for travel and would not put anyone on notice that Tirio traveled to New Mexico, for any purpose, or that the vacation statement was false. The appellants reference an agenda for the New Mexico conference that Tirio attended and argue that the trip was a vacation, because it was a break from his normal routine.

¶ 58    The law recognizes a distinction between "public" and "private" persons. In *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), the United States Supreme Court held that the first and fourteenth amendments require "a federal rule that prohibits a public official from

recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice.' " Under the *New York Times* standard, a statement made with actual malice was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 280. "Reckless disregard" is established if the defamatory matter was published despite a high degree of awareness of its probable falsity or while entertaining serious doubts as to its truth. *Davis v. John Crane, Inc.*, 261 Ill. App. 3d 419, 431 (1994). Allegations of actual malice "must be clothed with factual allegations from which the actual malice might reasonably be said to exist." *Davis v. Keystone Printing Service, Inc.*, 111 Ill. App. 3d 427, 441 (1982).

¶ 59    "While the bare assertion of actual malice is not enough to state a cause of action (*Coursey v. Greater Niles Township Publishing Corp.*, 40 Ill. 2d 257, 266 (1968)), allegations that the statements made were false, were made with knowledge of their falsity, or were made in reckless disregard as to their truth or falsity have been held by our supreme court to be sufficient to withstand a motion to dismiss [citations.]" *Krueger v. Lewis*, 342 Ill. App. 3d 467, 472-73 (2003) (actual malice was sufficiently alleged where the complaint stated that the statements were made by the defendant "in full knowledge that they were untrue or in reckless disregard of their truth or falsity") (internal quotation marks omitted) (citing *Colson v. Stieg*, 89 Ill. 2d 205, 215-16 (1982) (finding that the allegations of malice under the *New York Times* standard were sufficient to withstand a motion to dismiss where the complaint alleged that the defendant made the allegedly defamatory statement "maliciously, wilfully and intentionally" and " 'knowing it to be false' "), and *Weber v. Woods*, 31 Ill. App. 3d 122, 127 (1975) (allegations that the defendant maliciously intended to injure the plaintiff and bring him into public disrepute by falsely and maliciously publishing statements concerning the plaintiff that were false, scandalous, malicious,

and defamatory were sufficient to allege actual malice)); see also *Davis*, 111 Ill. App. 3d at 442-43 (pleading that statements were "made maliciously and intentionally in full knowledge of their falsity or in complete and reckless disregard of their truth or falsity" was sufficient to withstand a motion to dismiss).

¶ 60    In the present case, Tirio alleged that he was a person of good repute and had honorably served the citizens of McHenry County; that the funds he oversaw as the county recorder were a matter of public record, not secret, and not taxpayer funded; that anyone who knew that he went to New Mexico would have known the purpose of the trip; that the unknown defendants made statements that accused him of criminal conduct, theft of public funds, and official misconduct; and that the statements were made with actual knowledge that they were false or with reckless disregard as to whether they were false.  Because the pleadings must be liberally construed in the light most favorable to Tirio (*Davis*, 111 Ill. App. 3d at 443), we find that Tirio satisfied the requirements for alleging actual malice.  *Colson*, 89 Ill. 2d at 216.

¶ 61    In so ruling, we note that the appellants' argument that Tirio failed to allege actual malice relies on the public records at issue and on a conference agenda for Tirio's New Mexico trip. However, at the pleading stage, we are required to interpret the facts alleged in the complaint in the light most favorable to Tirio, and a complaint should not be dismissed unless the pleading discloses that no set of facts could be proved that would entitle the petitioner to relief.  *Hadley*, 2015 IL 118000, ¶ 29.  Tirio adequately alleged that the public records would establish actual malice.  We agree with the trial court that whether the public records actually do establish actual malice is an issue of fact to be addressed during further proceedings in this case.  See *Davis*, 111 Ill. App. 3d at 443 (noting that, although the plaintiff might be unable to prove actual malice, it was sufficiently pleaded to state a cause of action).

¶ 62   Based on the foregoing, we conclude that Tirio's complaint alleges facts to establish a cause of action for defamation sufficient to withstand a section 2-615 motion to dismiss. Thus, the necessity requirement was established and the trial court properly granted Tirio's Rule 224 petition.

¶ 63                                B. Motion to Stay

¶ 64   The appellants' next contention is that the trial court erred in denying their motion to stay compliance with the disclosure order pending appeal. The appellants contend that Tirio could have filed a valid defamation suit against the Integrity Fund. The appellants argue that the trial court thus erred in denying the motion to stay on the basis that it would harm Tirio's ability to file his defamation suit within the applicable limitations period.

¶ 65   Illinois Supreme Court Rule 305(b) (eff. July 1, 2004) provides as follows:

"(b) Stays of Enforcements of Nonmoney Judgments and Other Appealable Orders. Except in cases provided for in paragraph (e) of this rule, on notice and motion, and an opportunity for opposing parties to be heard, the court may also stay the enforcement of any judgment, other than a judgment, or portion of a judgment, for money, or the enforcement, force and effect of appealable interlocutory orders or any other appealable judicial or administrative order. The stay shall be conditioned upon such terms as are just. A bond or other form of security may be required in any case, and shall be required to protect an appellee's interest in property."

In making a determination on a stay pursuant to Rule 305(b), there is no specific set of factors that a court must consider. *Stacke v. Bates*, 138 Ill. 2d 295, 304-05 (1990). Nevertheless, our supreme court has stated that, to prevail on a motion for a stay, the movant must "present a substantial case on the merits and show that the balance of the equitable factors weighs in favor

of granting the stay." *Id.* at 309. The equitable factors to consider include "whether a stay is necessary to secure the fruits of the appeal in the event the movant is successful" and whether hardship on other parties would be imposed. *Id.* at 305-09. "If the balance of the equitable factors does not strongly favor [the] movant, then there must be a more substantial showing of a likelihood of success on the merits." *Id.* at 309. The decision whether to grant a stay is a discretionary act, which will be reversed on appeal only if the evidence establishes an abuse of discretion. *Id.* at 302; *Fick v. Weedon*, 244 Ill. App. 3d 413, 418 (1993). An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court. *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 21.

¶ 66    In arguing that the trial court erred, the appellants rely on *Hadley*, 2015 IL 118000. In that case, the court addressed whether a defamation complaint was a legal nullity because it used a fictitious name for the defendant. *Id.* ¶ 15. The plaintiff filed a defamation suit against "Subscriber Doe, a/k/a Fuboy," based on statements made by Fuboy in the comments section of a newspaper website. *Id.* ¶ 1. The court noted the general rule that suits brought against fictitious parties are without legal effect because an action must be commenced against an "identifiable, real person or entity." *Id.* ¶ 16 (quoting *Bogseth v. Emanuel*, 166 Ill. 2d 507, 513-14 (1995)). The court found *Bogseth* inapplicable, however, because Fuboy was a real person who had validly adopted that alias as a username on the newspaper website. *Id.* ¶ 19. Additionally, Fuboy had been represented by counsel throughout the proceedings and would not be prejudiced by a finding that the complaint was valid. The court concluded that "the concerns that are typically associated with the use of John Doe defendants, *e.g.*, ensuring adequate notice or preventing fraud on the courts, are not present in this case." *Id.* ¶ 18.

¶ 67    Based on the holding in *Hadley*, the appellants argue that the Integrity Fund is a validly assumed alias taken by the unknown defendants and that nothing prevented Tirio from filing a valid suit against it.  However, unlike in *Hadley*, the issue in this case is not whether a complaint against the Integrity Fund would be a legal nullity.  In this case, the issue is whether Tirio can file his suit against the unknown defendants within the limitations period.

¶ 68    The limitations period to file a defamation claim is one year.  See 735 ILCS 5/13-201 (West 2018).  The "discovery rule" tolls the period until such time that one knew, or reasonably should have known, of his injury and that it was wrongfully caused.  *Peal v. Lee*, 403 Ill. App. 3d 197, 207 (2010).  While there is uncertainty as to when the discovery rule should apply in defamation cases, it has been stated that it should not be applied " 'unless the publication was hidden, inherently undiscoverable, or inherently unknowable.' "  *Id.* (quoting *Blair v. Nevada Landing Partnership*, 369 Ill. App. 3d 318, 326 (2006)).  Further, the argument that the limitations period should be tolled because the plaintiff did not know the identity of each person who made a defamatory statement about him has been rejected.  *Id.* at 207-08 (citing *Guebard v. Jabaay*, 65 Ill. App. 3d 255, 258 (1978) (rejecting plaintiff's argument that discovery rule applies when injury was known but the identities of persons causing such injury were not known)).

¶ 69    In the present case, we cannot say that the trial court abused its discretion in denying the motion for a stay of the disclosure order pending appeal.  The discovery rule would not necessarily apply, because the publication of the flyers was not hidden, undiscoverable, or unknowable.  *Id.* at 207.   It is clear that if Tirio filed his defamation complaint against the Integrity Fund it would not be a legal nullity.  *Hadley*, 2015 IL 118000, ¶ 19.  However, it is unclear whether the discovery rule would toll the limitations period as to the unknown defendants.  *Peal*, 403 Ill. App. 3d at 207-08.  The trial court specifically stated that, based on

*Peal*, the discovery rule would not necessarily toll the limitations period and thus a stay could result in Tirio losing any viable cause of action against the unknown defendants. The trial court found that the prejudice to Tirio in granting a stay far outweighed any prejudice to the appellants in denying a stay. The appellants have failed to cite any case law establishing that, if Tirio filed suit against the Integrity Fund, he could later add the unknown defendants after the expiration of the limitations period. As such, we cannot say that no reasonable person would take the position adopted by the trial court. The appellants have thus not shown that the trial court abused its discretion in denying a stay.

¶ 70                                C. Contempt Finding

¶ 71     The appellants' final contention is that the trial court erred in denying their request for a friendly contempt finding and instead ordering incarceration. Specifically, the trial court held Breaker in indirect civil contempt for failing to comply with the disclosure order and ordered Breaker's president incarcerated pending compliance with the order. The appellants acknowledge that the trial court's refusal to enter a friendly contempt order and impose a nominal sanction was based on the potential harm caused by the running of the limitations period. The appellants argue that such concern was unfounded because Tirio could have filed a valid suit against the Integrity Fund and thus it was not necessary to disclose the identities of the unknown defendants prior to the resolution of this appeal. The appellants cite various cases where civil contempt was punished with a finding of friendly contempt and a nominal sanction.

¶ 72     "Generally, civil contempt occurs when a party fails to do something ordered by the trial court, resulting in the loss of a benefit or advantage to the opposing party." *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107 (2006). "Contempt that occurs outside of the presence of the trial court is classified as indirect contempt." *Id.* "The existence of an order of the trial court

and proof of willful disobedience of that order are essential to any finding of indirect civil contempt." *Id.* "The standard of review for contempt orders is abuse of discretion." *Western States Insurance Co. v. O'Hara*, 357 Ill. App. 3d 509, 515 (2005). "An abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court." *In re Marriage of Moore*, 307 Ill. App. 3d 1041, 1043 (1999).

¶ 73    In the present case, the appellants do not challenge the existence of the discovery order or the finding that they were willfully disobedient in not complying with the order. Rather, they challenge only the trial court's sanction for the civil contempt. However, incarceration for civil contempt is appropriate so long as it serves a coercive purpose. *Sanders v. Shephard*, 258 Ill. App. 3d 626, 630 (1994). As previously explained, the trial court's concern over the running of the limitations period was not unfounded. If Breaker did not disclose the unknown defendants, Tirio could have lost his opportunity to file suit against them. Accordingly, we cannot say that the trial court abused its discretion in ordering incarceration.

¶ 74                        III. CONCLUSION

¶ 75    For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

¶ 76    Affirmed.

¶ 77    JUSTICE HUTCHINSON, specially concurring:

¶ 78    I agree with the decision and analysis of the majority in this case, but I write separately for a specific reason. At oral argument, appellants' counsel consistently used the term "non-essential" education when referring to the allegation that Tirio attended a conference in New Mexico for four days at the end of February 2017. Furthermore, at oral argument it was quite clear that this conference was the "taxpayer-funded vacation" identified in some of the campaign

flyers at issue in this lawsuit. When asked, appellants' counsel admitted that the term "non-essential" was her description of the conference in New Mexico, even though it did not appear that she was familiar with the entity that sponsored the conference or with its content.

¶ 79 I found this assessment that the conference was "non-essential" odd, especially in light of the fact that lawyers and judges in the State of Illinois are required to acquire a certain amount of continuing legal and judicial education respectively on a regular basis. See Ill. S. Ct. R. 790 (eff. Sept. 29, 2005); Rs. 791, 796 (eff. Mar. 1, 2019); Rs. 793, 794 (eff. July 1, 2017). Admittedly, a county recorder need not be a lawyer or a judge, but he or she is a professional who holds a position of trust within the community he or she serves. Continuing professional development or continuing professional education might not be required for a recorder, but it also does not appear to be "non-essential," especially for a first-term recorder.

¶ 80 The organization that sponsored this conference, the Property Records Industry Association, identifies its mission as developing and promoting "national standards and best practices for the property records industry, including: Technology Standards[,] Implementation Guides[,] White Papers[,] Best Practices[,] Model Legislation[, and] and Informational Resources." PRIA, http://pria.us/i4a/pages/index.cfm?pageid=1 (last visited September 19, 2019) [https://perma.cc/PXQ3-BJ7G]. Furthermore, the materials in the published resource library could be particularly helpful to a recorder facing eRecording onset or changes and other technology issues.

¶ 81 As a former chair of the Illinois Supreme Court Committee on Education, I find all opportunities for professional education a gift, and I encourage my colleagues and all public officials to take the time to learn and to refresh and renew themselves by finding appropriate, reasonably priced educational and professional programs on a regular basis. In addition to the

actual substance offered at any given conference, the opportunity to speak with and learn from others in the profession is invaluable.

¶ 82    "Non-essential"—I think not.